[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-10719

_____

D. C. Docket No. 00-02762-CV-AR-S

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 13, 2004
THOMAS  K. KAHN
CLERK

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellant,

versus

PEMCO AEROPLEX, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(September 13, 2004)**

Before MARCUS and WILSON, Circuit Judges, and DUPLANTIER[*], District Judge.

MARCUS, Circuit Judge:

---

[*]Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation.

At issue today is whether the plaintiff, Equal Employment Opportunity Commission ("EEOC"), may proceed with a Title VII enforcement action charging the defendant Pemco Aeroplex, Inc. ("Pemco") with companywide racial harassment, notwithstanding an adverse judgment rendered in a separate action brought by a number of individual plaintiffs who alleged racial harassment by the same defendant. The district court entered summary judgment for the defendant holding that the EEOC was bound by the prior judgment even though the Commission's suit covers employees who were not part of the earlier private suit and notwithstanding that the EEOC was twice denied the opportunity to consolidate its case with the private suit. Because we conclude that there was no privity between the EEOC and the private plaintiffs in the prior action, the district court erred in applying the doctrines of res judicata and collateral estoppel. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**I**

The facts and procedural history of this case are straightforward. On December 9, 1999, thirty-six African-American employees of Pemco, a military airplane repair and maintenance facility, filed suit in the Northern District of

Alabama against their employer, claiming that Pemco violated 42 U.S.C. § 1981 by subjecting them to racial harassment and other forms of race discrimination. See Thomas v. Pemco Aeroplex, No. CV-99-AR-3280-S (N.D. Ala.). The case was initially brought as a class action, but the plaintiffs withdrew their class claim after Pemco opposed certification, and prosecuted the case as thirty-six individual plaintiffs consolidated in one action.

At the same time, the EEOC was investigating multiple charges of discrimination at Pemco, having uncovered possible evidence of nooses, racially inflammatory graffiti, racial slurs by coworkers and supervisors, and other disconcerting incidents of race-related conduct at Pemco's Birmingham facility dating back at least to the late 1980s. In September 2000, the EEOC brought its own suit (the instant case) against Pemco under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, alleging that Pemco subjected its 200 or more black employees to a racially hostile work environment. The EEOC sought injunctive relief and monetary compensation for all of the company's 200 or more black employees. This case was assigned to the same district judge who was hearing the Thomas case.

In October 2000, the EEOC moved to consolidate this suit with the private action (the Thomas case), noting that the two cases involved the same witnesses

3

and issues, and raised common issues of law and fact. Pemco vigorously opposed the motion, arguing that the suits were substantially different and that consolidation would cause the company extreme prejudice. Specifically, Pemco argued that the EEOC's suit involved only one substantive claim -- a hostile work environment claim covered by Title VII -- while the Thomas suit involved dozens of individual plaintiffs, each with his own claims. The district court denied, without explanation, the request to consolidate the cases for trial, but granted the EEOC's application that discovery undertaken in either case could be used to the extent relevant in the other case.

In February 2002, after discovery in the private suit was completed, the EEOC again moved to consolidate the cases for trial, and offered to forgo further discovery in its own case for the chance to try the cases together. Pemco again opposed the motion, contrasting the EEOC's broad suit alleging class-wide discrimination with the thirty-one[1] private plaintiffs' individual claims. Indeed, Pemco argued that much of the evidence of class-wide discrimination pertinent to the EEOC's suit would be not only irrelevant but also prejudicial to the individual

---

[1]By this point, several of the original plaintiffs' claims had been dismissed on procedural grounds.

claims. Again, the district court denied the consolidation motion without explanation.

During discovery, the EEOC had attended most of the depositions of the witnesses. The EEOC's attorneys met or conferenced with counsel for the individual plaintiffs on many occasions prior to trial. In April 2002, nine of the Thomas plaintiffs, including the lead plaintiff, settled with Pemco. The remaining twenty-two plaintiffs -- who had worked in various parts of Pemco's facility -- went to trial before a jury in June. During that trial, an EEOC attorney was present in the courtroom about half the time according to the EEOC, and virtually each day, according to Pemco.[2] Notably, EEOC's counsel did not sit at counsel table during the trial, offer evidence, examine witnesses, or otherwise participate in the trial of the Thomas case.

On June 26, the jury found that none of the twenty-two plaintiffs had been subjected to a hostile work environment between December 9, 1997 and June 3, 2002. The jury was not asked to determine whether a racially hostile work environment existed at Pemco during that time frame. Rather, the jury was asked to decide whether each individual plaintiff had been subjected to a hostile work environment on account of race. The jury answered "no" as to each plaintiff. The

---

[2]According to the district court's order, the EEOC's attorney sat, "with some frequency, in the audience as an alert and interested observer." EEOC v. Pemco Aeroplex, Inc., No. 00-AR-2762-S, slip. op. at 3.

5

court entered judgment against the twenty-two plaintiffs who had gone to trial in the Thomas case, and against Pemco as to the plaintiffs who had accepted offers of judgment.

Soon after, Pemco moved for summary judgment in the EEOC's suit, alleging that it was barred on the grounds of res judicata and collateral estoppel in light of the adverse verdicts in the Thomas suit. Pemco claimed that the two suits addressed the same question -- whether a racially hostile work environment pervaded the work atmosphere at Pemco -- and that the jury verdict answered this question in the negative. Pemco also argued that the EEOC was in privity with the twenty-two plaintiffs -- and could therefore be bound by the verdict against them -- essentially because EEOC attorneys attended the trial, participated in joint discovery, and met with plaintiffs' counsel on numerous occasions. The district court granted Pemco's motion, finding that the issues and the evidence in the EEOC's suit were "the same" as those in the Thomas case. See EEOC v. Pemco Aeroplex, Inc., No. 00-AR-2762-S (N.D. Ala. Dec. 13, 2002). Without unambiguously finding privity between the EEOC and the private plaintiffs, the district court observed that the EEOC had the opportunity to participate in discovery in Thomas, and that EEOC counsel sat in on the Thomas trial as an "alert and interested observer." Slip op. at 3. The EEOC appealed.

6

## II

The threshold issue in this case is whether the EEOC was in privity with the twenty-two private plaintiffs in the Thomas action.  If they were not, then plainly the EEOC cannot be bound by the judgment in that case no matter how identical the claims or similar the evidence may have been.  Simply put, before the doctrines of either res judicata or collateral estoppel may be asserted against a party, it must be established that the party in the second action was either a party in the previous action or a privy of the party in that action.  This principle is particularly important where the party in the second action is a governmental agency reposed with independent statutory power to enforce the law and having independent interests not shared by a private party.

In the case before us, we apply federal law, because "federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction."  CSX Transp., Inc. v. Brotherhood of Maint. of Way Employees, 327 F.3d 1309, 1316 (11th Cir. 2003).  We have held that res judicata can be applied only if all of four factors are shown: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action."  In re

7

Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001) (citing Israel Discount Bank Ltd. v. Entin, 951 F.2d 311, 314 (11th Cir. 1992); In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990)).  Likewise, in this Circuit, collateral estoppel can apply only "when the parties are the same (or in privity) [and] if the party against whom the issue was decided had a full and fair opportunity to litigate the issue in the earlier proceeding."  In re Southeast Banking Corp., 69 F.3d 1539, 1552 (11th Cir. 1995) (citing Allen v. McCurry, 449 U.S. 90, 95, 101 S. Ct. 411, 415, 66 L. Ed. 2d 308 (1980); In re St. Laurent, 991 F.2d 672, 675 (11th Cir. 1993)).  If identity or privity of parties cannot be established, then there is no need to examine the other factors in determining whether res judicata or collateral estoppel applies.  Thus, if there was no privity between the EEOC and the Thomas plaintiffs, summary judgment was improvidently granted and the district court's order must be reversed.

We review a district court's order granting summary judgment de novo.  See Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1296 (11th Cir. 2000).  A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

8

56(c).  We also review de novo a district court's determination of res judicata or collateral estoppel.  See Jang v. United Techs. Corp, 206 F.3d 1147, 1149 (11th Cir. 2000).  However, whether a party is in privity with another for preclusion purposes is a question of fact that is reviewed for clear error.  See Mesa Petroleum Co. v. Coniglio, 787 F.2d 1484, 1489-90 (11th Cir. 1986) (citing Astron Indus. Assocs., Inc. v. Chrysler Motors Corp., 405 F.2d 958 (5th Cir. 1968)).

This Circuit's preclusion standards reflect the longstanding and deep-rooted principle of American law that a party cannot be bound by a judgment in a prior suit in which it was neither a party nor in privity with a party.  See Martin v. Wilks, 490 U.S. 755, 761-62, 109 S. Ct. 2180, 2184, 104 L. Ed. 2d 835 (1989); Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 327 n.7, 99 S. Ct. 645, 649 n.7, 58 L. Ed. 2d 552 (1979); Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 328-329, 91 S. Ct. 1434, 1442-1443, 28 L. Ed. 2d 788 (1971); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110, 89 S. Ct. 1562, 1569, 23 L. Ed. 2d 129 (1969); Hansberry v. Lee, 311 U.S. 32, 40, 61 S. Ct. 115, 117, 85 L. Ed. 22 (1940).  As the Supreme Court has written, "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings."  Martin, 490 U.S. at 762, 109 S. Ct. at 2184.  "This rule is part of our 'deep-rooted historic tradition that everyone

should have his own day in court.'" Richards v. Jefferson County, Ala., 517 U.S. 793, 798, 116 S. Ct. 1761, 1766, 135 L. Ed. 2d 76 (1996) (quoting 18 C. Wright et al., Federal Practice and Procedure § 4449, at 417 (1981)). Pemco does not, and cannot, deny that the EEOC was not a party in the Thomas action. Therefore, the EEOC can only be bound by the result in that case if it was in privity with the plaintiffs in that case.

"Privity" is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party. Hansberry, 311 U.S. at 41-43, 61 S. Ct. at 117-19. Adequate representation can arise in a number of circumstances. For example, "a judgment that is binding on a guardian or trustee may also bind the ward or the beneficiaries of a trust." Richards, 517 U.S. at 798, 116 S. Ct. at 1766. The judgment in a class action may be binding on members of that class. Hansberry, 311 U.S. at 41-42, 61 S. Ct. at 117-118. Or, "where a special remedial scheme exists expressly foreclosing successive litigation by nonlitigants, as for example in bankruptcy or probate, legal proceedings may terminate preexisting rights if the scheme is otherwise consistent with due process." Martin, 490 U.S. at 762 n.2, 109 S. Ct. at 2184 n.2 (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 529-530 n.10, 104 S. Ct.

10

1188, 1198 n.10, 79 L. Ed. 2d 482 (1984); Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988)).

Obviously, none of these forms of privity are present in this case. As we see it, then, only two of the recognized types of privity are even remotely plausible here: the theory of "virtual representation," or "control" over the previous litigation. Although the district court never employed either of these terms in its order granting summary judgment, the relationship the district court and Pemco describe between the EEOC and the Thomas plaintiffs more closely resembles these two forms that privity may take. Other ways in which privity can be demonstrated -- class representatives or trustee/beneficiary, for example -- are obviously inapplicable. We therefore address the two types of privity that form the core of Pemco's argument. Our review of the record, however, suggests that neither virtual representation nor control over the previous litigation can be found in this case.

**A. Virtual Representation**

First, Pemco says that privity is present here because the Thomas plaintiffs' interests were so similar to those of the EEOC that they acted as the EEOC's virtual representatives. "Virtual representation" is a term of art that we have

11

defined as applying "when the respective interests are closely aligned <u>and</u> the party to the prior litigation adequately represented those interests." <u>Delta Air Lines, Inc. v. McCoy Rests., Inc.</u>, 708 F.2d 582, 587 (11th Cir. 1983) (citing <u>Southwest Airlines Co. v. Texas Int'l Airlines, Inc.</u>, 546 F.2d 84, 100 (5th Cir. 1977)) (emphasis added).[3] The doctrine of virtual representation provides in essence that "a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." <u>Aerojet Gen. Corp. v. Askew</u>, 511 F.2d 710, 717 (5th Cir. 1975).[4] Whether a party is a virtual representative of another is a question of fact. <u>Mesa Petroleum</u>, 787 F.2d at 1489-90(citing <u>Astron Indus. Assocs.</u>).

We have employed four factors in determining whether there is virtual representation: whether there was "participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, [and] close relationships

---

[3]Technically, the <u>Delta</u> panel was not entirely clear whether this was its specific definition of "virtual representation," or whether it was denoting characteristics that applied for a number of concepts of preclusion, of which virtual representation was only one. <u>See</u> <u>Delta</u>, 708 F.2d at 587 ("Under res judicata doctrines such as 'virtual representation,' a litigant may be precluded from litigating an issue based on a prior lawsuit in which, although he was not a party, his interests were represented by a party. This principle applies, however, only when the respective interests are closely aligned and the party to the prior litigation adequately represented those interests." (citation omitted)). However, a later decision in this Circuit quoted this language as specifically defining virtual representation. <u>Jaffree v. Wallace</u>, 837 F.2d 1461, 1467 (11th Cir. 1988).

[4]The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (<u>en banc</u>).

between the parties and nonparties." Jaffree v. Wallace, 837 F.2d 1461, 1467 (11th Cir. 1988) (quoting 18 Wright & Miller, Federal Practice & Procedure § 4457, at 494-99) (alteration in original). All of these factors need not be found to meet the virtual representation standard, nor is it necessarily enough that one of them is found; rather, we examine them in concert to determine whether there is virtual representation.

As for the first factor, the EEOC "participated" in the first litigation only in the sense that it conducted discovery jointly, met with private plaintiffs' counsel, and attended (but did not and could not participate in) part of the trial. Specifically, the EEOC took part in discovery after the district court allowed joint discovery in both cases. EEOC representatives also participated in mediation with the plaintiffs when Pemco sought an overall resolution to both actions and refused to mediate in Thomas unless EEOC also agreed to participate in the mediation. The parties disagree over how much time an EEOC attorney spent sitting in the courtroom during the Thomas trial and how often they conferred with the Thomas plaintiffs' counsel. But, most notably, the EEOC was not a party and there is no indication that it took the lead in the litigation, was heard at all during the trial, or served in anything other than an advisory capacity to the plaintiffs. The EEOC's representatives did not sit at counsel's table, attend every day of the trial, examine

13

any witnesses, proffer any evidence, or exert any control over the plaintiffs' decisions. Indeed, the EEOC had no power to decide which claims the plaintiffs could assert, nor could it or did it decide how to argue the Thomas case, nor did it have any authority to settle or refuse to settle that suit. Finally, the EEOC had no authority to decide whether any appeal should be taken from the adverse judgments in the Thomas case.

Overall, these factors do not warrant a finding of virtual representation. Indeed, this finding is altogether consonant with the result reached in South Central Bell Tel. Co. v. Alabama, 526 U.S. 160, 119 S. Ct. 1180, 143 L. Ed. 2d 258 (1999), where the Supreme Court found that privity did not exist even when the plaintiffs in the two cases shared the same lawyer. 526 U.S. at 168, 119 S. Ct. at 1185; see also Sec'y of Labor v. Fitzsimmons, 805 F.2d 682, 691-94 (7th Cir. 1986) (finding that there was no privity even though the Secretary of Labor had taken part in a joint discovery with the plaintiffs in the prior action; had intervened to object to the settlement in the private action; and the private litigants had statutorily been required to provide notice of their suit to the Secretary).

In the second place, the EEOC plainly did not "consent to be bound" by the judgment in the litigation in which in was not allowed to be a party. There is no indication anywhere in the record that the EEOC ever agreed to drop its case if the

14

private plaintiffs lost their case against Pemco, or, for that matter, if the individual plaintiffs won.

The third factor is "tactical maneuvering," which has been described as "maneuvering to avoid preclusion." 18A Wright & Miller, Federal Practice & Procedure 2d § 4457, at 544-45 (2003). The EEOC did no such thing; indeed, it tried repeatedly to get into the earlier litigation, a move which, if successful, would obviously have barred it from asserting the same or similar claims later. In fact, it has been suggested that for there to be a finding that tactical maneuvering occurred, "it is not enough that a nonparty deliberately resisted inclusion in the earlier litigation." Id. at 545 (citing Bogenholm v. House, 388 N.W.2d 402, 407 & n.5 (Minn. App. 1986)). So it would be truly anomalous to find tactical maneuvering when a party vigorously sought but was prevented from being included in the earlier litigation. Furthermore, "tactical maneuvering" by the opposing party to create preclusion may be a powerful indicator that virtual representation should not be found to exist. See id. (citing Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343 (2d Cir. 1995)). Pemco arguably did just that, by trying to keep the EEOC as a party out of the original Thomas litigation and then pushing to preclude it from bringing its own suit.

15

The fourth factor, "close relationships between the parties and nonparties," has been described by a panel of the former Fifth Circuit as requiring "an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." Pollard v. Cockrell, 578 F.2d 1002, 1008 (5th Cir. 1978). In that case, the Court listed examples of such relationships as "estate beneficiaries bound by administrators, presidents and sole stockholders by their companies, parent corporations by their subsidiaries, and a trust beneficiary by the trustee." Id. at 1008-09 (quoting Southwest Airlines Co., 546 F.2d at 97). The Pollard Court's list of "close relationships" consists of legal relationships involving a significant degree of accountability or control by one party over the other. Plainly, the relationship between the EEOC and individual plaintiffs on whose behalf they act does not have any of these traits.

So of the four factors that could establish virtual representation, three are clearly absent and one (participation in the original litigation) is only barely present. Thus, not surprisingly, we conclude that the Thomas plaintiffs were not the virtual representatives of the EEOC, a finding that is further supported by our holding in Dills v. City of Marietta, Ga., 674 F.2d 1377 (11th Cir. 1982). In Dills, a panel of this Court refused to back away from what it described as Pollard's

16

basic holding that "the doctrine of virtual representation require[s] an express or implied legal relationship in which parties to the first suit are <u>accountable to non-parties</u> who file a suit raising identical issues." <u>Id.</u> at 1379 (internal quotation marks omitted) (emphasis added). Thus, if the party to the prior litigation was not legally accountable to the party in the latter, then virtual representation cannot be present, regardless of any other factor. Applying this standard, it is clear enough that the EEOC and the original private plaintiffs had no such connection. The private plaintiffs who sued Pemco were in no way legally accountable to the EEOC, they were not under the EEOC's control, and the EEOC had no power to require them to do anything. In short, we think there is little question that the <u>Thomas</u> plaintiffs were not virtual representatives of the EEOC.

Other cases relied upon by Pemco are plainly different. In urging the trial court to find privity, Pemco cited the Eleventh Circuit's decision in <u>NAACP v. Hunt</u>, 891 F.2d 1555 (11th Cir. 1990). In <u>Hunt</u>, a panel of this Court found that a challenge to the constitutionality of Alabama's practice of flying the Confederate flag on top of the state capitol was precluded by an adverse judgment in a similar suit brought thirteen years earlier. The original plaintiff and the later plaintiffs were both state legislators and members of the NAACP, and we found that the

17

interests of the original plaintiff were "so closely aligned to the NAACP's interests in the original suit that he was their virtual representative." Id. at 1561.

There are several powerful differences between this case and Hunt, however. First, Hunt applied Alabama's law of preclusion rather than federal preclusion law. Id. at 1560. And federal privity principles, as detailed above, employ a discernibly higher standard than the Alabama law applied in Hunt. Moreover, the Supreme Court's post-Hunt decisions in Richards and South Central Bell both narrowed Alabama's preclusion law, reversing Alabama Supreme Court holdings that preclusion applied.

In addition, Hunt involved a general public law issue that affected the plaintiffs' private interests only indirectly, unlike the alleged racial harassment at Pemco. The Supreme Court has explicitly distinguished between such generalized public law challenges and more individualized cases, suggesting that there is less preclusion protection for a plaintiff who "complain[s] about an alleged misuse of public funds, or about other public action that has only an indirect impact on his interests." Richards, 517 U.S. at 803, 116 S. Ct. at 1768 (citations omitted). Indeed, the Supreme Court has suggested that in cases involving broad public interest matters, "we may assume that the States have wide latitude to establish procedures . . . to limit the number of judicial proceedings that may be

18

entertained," as opposed to suits in which individual interests are clearly and directly implicated. Id.[5]

In short, we can find no support for the suggestion that the Thomas plaintiffs were "virtual representatives" of the EEOC in this case, and therefore conclude that it would have been clearly erroneous to impute privity to the parties on this basis.

## B. Control

Analytically separate from a finding of virtual representation, the EEOC could still be found in privity with a private party if it effectively <u>controlled</u> the private party's litigation. However, in this case, such control is even less evident than virtual representation. In <u>Montana v. United States</u>, 440 U.S. 147, 99 S. Ct.

---

[5] Pemco's argument that the EEOC's interests were adequately represented by the private litigants also relies on <u>Petit v. City of Chicago</u>, No. 90-C-4984, 1999 WL 66539 (N.D. Ill., Feb. 8, 1999), an unreported case in which a district court found that a suit challenging a city's sergeant qualifying exam as racially discriminatory was estopped because of a previous suit bringing the same claim. Id. at *8. The court noted that there was privity because "[a]lthough not all the plaintiffs were parties to [the previous case], 19 of the present plaintiffs were plaintiffs in [that case], the same attorney represents the plaintiffs in both cases, and the prior history of consolidated discovery means that the available evidence regarding past discrimination is the same for both cases." Id. at *5. This was purely dicta, however, because the plaintiffs had made no privity argument and therefore waived that legal issue. Id. Moreover, the Thomas plaintiffs used non-EEOC lawyers; the EEOC's interests and legal responsibilities are wholly distinct from those of the private plaintiffs; and there is no indication that any of the Petit plaintiffs had tried and failed to join the earlier suit against the city, as the EEOC tried to consolidate its action with the private action against Pemco.

970, 59 L. Ed. 2d 210 (1979), the Supreme Court held that preclusion principles applied to the federal government, barring it from bringing suit against the state of Montana when a previous similar suit by a private contractor had been adjudicated on its merits. The Court found privity between the federal government and a private contractor when:

> The Government has stipulated that it:
>
> (1) required the [original] lawsuit to be filed;
> (2) reviewed and approved the complaint;
> (3) paid the attorneys' fees and costs;
> (4) directed the appeal from State District Court to the Montana Supreme Court;
> (5) appeared and submitted a brief as <u>amicus</u> in the Montana Supreme Court;
> (6) directed the filing of a notice of appeal to this Court; and
> (7) effectuated [the plaintiff]'s abandonment of that appeal on advice of the Solicitor General.

<u>Id.</u> at 155, 99 S. Ct. at 974. Under these peculiar circumstances, the Supreme Court found that the United States "plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel." <u>Id.</u>

In this case, the EEOC did not control the <u>Thomas</u> proceedings. It could not and did not require the original lawsuit to be filed. It did not hire or pay the private plaintiffs' attorneys, fees, and costs, and the EEOC never directed the <u>Thomas</u> plaintiffs to file or abandon their suit or, for that matter, do anything else.

20

Nor did the EEOC direct the filing of a notice of appeal to this Court, or otherwise require the Thomas plaintiffs to abandon their claims. In short, there is no comparison between the control the government exerted over the private litigation prior to the Montana case and the role the EEOC played in the Thomas action. As far as we can tell, no panel of this Court has ever before found privity between a governmental agency and private citizens due to the agency's control over the private citizens' suit. This case would not be a good place to start.

## C. Independent Agency Authority

We add that it is particularly rare to find privity between a private party in one action and a party in a later action when the party in the later action is a governmental agency. It is a "well-established general principle that the government is not bound by private litigation when the government's action seeks to enforce a federal statute that implicates both public and private interests." Herman v. South Carolina Nat'l Bank, 140 F.3d 1413, 1425 (11th Cir. 1998). Indeed, if we were to hold that there was privity between the Thomas plaintiffs and the EEOC due to virtual representation or control, it would be the first time this Court has ever found this kind of privity between a governmental agency and the private plaintiffs in a prior action. As the Seventh Circuit has put it, "[t]he

21

Government is not barred by the doctrine of res judicata from maintaining

independent actions asking courts to enforce federal statutes implicating both

public and private interests merely because independent private litigation has also

been commenced or concluded." Secretary of Labor v. Fitzsimmons, 805 F.2d

682, 692 (7th Cir. 1986). Moreover, most Supreme Court cases addressing the

subject have found that governmental agencies were not bound by the final

judgment in a private suit similar to the one they were bringing. See Hathorn v.

Lovorn, 457 U.S. 255, 268 n.23, 102 S. Ct. 2421, 2430 n.23, 72 L. Ed. 2d 824

(1982); City of Richmond v. United States, 422 U.S. 358, 373 n.6, 95 S. Ct. 2296,

2305 n.6, 45 L. Ed. 2d 245 (1975); Sam Fox Publ'g Co., Inc. v. United States, 366

U.S. 683, 689- 90, 81 S. Ct. 1309, 1313, 6 L. Ed. 2d 604 (1961).

Quite simply, it is so unusual to find privity between a governmental agency

and private plaintiffs because governmental agencies have statutory duties,

responsibilities, and interests that are far broader than the discrete interests of a

private party. In United States v. East Baton Rouge Parish Sch. Bd., 594 F.2d 56

(5th Cir. 1979), the former Fifth Circuit explained this principle in these terms:

> [T]he district court's conclusion [that the private plaintiffs and the
> United States were identical] is directly contrary to the general
> principle of law that the United States will not be barred from
> independent litigation by the failure of a private plaintiff. This
> principle is based primarily upon the recognition that the United

22

States has an interest in enforcing federal law that is independent of any claims of private citizens. In the present context the Supreme Court has characterized this as "the highest public interest in the due observance of all constitutional guarantees."

Id. at 58 (quoting United States v. Raines, 362 U.S. 17, 80 S. Ct. 519, 4 L. Ed. 2d 524 (1960)) (citations omitted). It is precisely this public interest function that distinguishes governmental agencies from private litigants, and the EEOC is certainly no exception to the principle that these agencies have responsibilities with a scope far beyond the legal interests of individual plaintiffs.

In fact, as the Supreme Court has observed about the statutory responsibilities of the EEOC:

> Although the EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for backpay or benefits denied, on behalf of discrimination victims, the agency is guided by "the overriding public interest in equal employment opportunity . . . asserted through direct Federal enforcement." When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.

General Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 326, 100 S. Ct. 1698, 1704, 64 L. Ed. 2d 319 (quoting 118 Cong. Rec. 4941 (1972)).

The EEOC has broad authority to enforce employment law as it sees fit, going beyond the rights of individual plaintiffs. As its authorizing statute says:

> The Commission shall have power --

23

(1) to cooperate with and, with their consent, utilize regional, State, local, and other agencies, both public and private, and individuals;
(2) to pay to witnesses whose depositions are taken or who are summoned before the Commission or any of its agents the same witness and mileage fees as are paid to witnesses in the courts of the United States;
(3) to furnish to persons subject to this subchapter such technical assistance as they may request to further their compliance with this subchapter or an order issued thereunder;
(4) upon the request of (i) any employer, whose employees or some of them, or (ii) any labor organization, whose members or some of them, refuse or threaten to refuse to cooperate in effectuating the provisions of this subchapter, to assist in such effectuation by conciliation or such other remedial action as is provided by this subchapter;
(5) to make such technical studies as are appropriate to effectuate the purposes and policies of this subchapter and to make the results of such studies available to the public;
(6) to intervene in a civil action brought under section 2000e-5 of this title by an aggrieved party against a respondent other than a government, governmental agency or political subdivision.

42 U.S.C.A. § 2000e-4(g).  All of these powers extend far beyond the authority given to individual aggrieved plaintiffs.  The enforcement provision of the Equal Employment Opportunities subchapter of the Federal Code says that "[t]he Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice."  Id. § 2000e-5(a) (emphasis added).  If conciliation efforts between an employer and employees fail, the EEOC may also seek classwide relief without being certified as a class representative under Fed. R. Civ. Pro. 23.  See id. § 2000e-5(f)(1); Gen. Tel. Co., 446 U.S. at

24

320; see also id. § 2000e-5(b)-(g) (detailing the EEOC's enforcement powers and the types of relief it may obtain pursuant to its statutory authority). Or, as the Seventh Circuit has put it, "[t]he EEOC's primary role is that of a law enforcement agency and it is merely a detail that it pays over any monetary relief obtained to the victims of the defendant's violation rather than pocketing the money itself and putting them to the bother of suing separately." In re Bemis Co., Inc., 279 F.3d 419, 421 (7th Cir. 2002). In this case, the EEOC has convincingly established that its enforcement role is incompatible with a finding that its authority to bring an enforcement action is barred by a judgment in a private suit.

We add that the courts have concluded that the EEOC may proceed with an enforcement action even where the charging party's action has been resolved. Recently, in EEOC v. Waffle House, Inc., 534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002), the Supreme Court held that the charging party's agreement to arbitrate claims did not limit the EEOC's authority to bring suit, although it was still "an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek." Id. at 297, 122 S. Ct. at 766. In addition, the former Fifth Circuit has held that "after the termination of a charging party's private suit the EEOC can bring suit predicated on, but not limited to, the same charge." EEOC v. Huttig Sash & Door

25

Co., 511 F.2d 453, 454 (5th Cir. 1975).  In that case, the previous suit had been voluntarily dismissed with prejudice.  Id.

Still other courts have reached similar results, rejecting preclusion of EEOC suits because of prior private actions against the same defendants.  See New Orleans Steamship Ass'n v. EEOC, 680 F.2d 23, 25 (5th Cir. 1982) ("[T]he EEOC may challenge a transaction which was the subject of prior judicial scrutiny in a private suit, if the subsequent challenge seeks different relief."); EEOC v. Kimberly-Clark Corp., 511 F.2d 1352, 1361-62 (6th Cir. 1975) (holding that the EEOC was not privy to a private settlement); see also EEOC v. Harris Chernin, Inc., 10 F.3d 1286, 1291 (7th Cir. 1993) (holding that there was no privity between a single plaintiff and the EEOC acting solely on his behalf insofar as the relief the EEOC sought was not individual damages and reinstatement but rather an injunction against further violation); EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539, 1542-43 (9th Cir. 1987) (same).

If the EEOC may pursue action on behalf of a sole person whose private suit has been resolved, then it would be truly anomalous to hold that the EEOC could be barred from bringing action here, when it is acting on behalf of many people who were not parties at all in the previous action.  The opposite is equally true; resolution of an EEOC case does not necessarily bar private suit from the person

26

on whose behalf the EEOC originally acted. Even when the EEOC's sole basis for suit is the allegations of one individual, final judgment on that claim does not bar her from suing privately in this Circuit. In Riddle v. Cerro Wire and Cable Group, Inc., 902 F.2d 918 (11th Cir. 1990), an employee was unsatisfied with a consent degree agreed upon by the EEOC, acting on her behalf, and her employer. She thus filed her own Title VII suit, and her employer argued that res judicata barred her action. The district court agreed and granted summary judgment, but a panel of this Circuit reversed, finding that there was no privity. Id. at 922-23. We reached this result even though "the EEOC's suit against Cerro was based solely on Riddle's charge of discrimination; it did not involve a class of employees or an allegation of pattern and practice discrimination," and the consent decree "specifically provided personal relief for Riddle." Id. at 922.

Again, the Court articulated how the interests of the individual plaintiff and the EEOC differ:

> The EEOC is primarily interested in securing equal employment opportunity in the workplace. That interest is often most completely advanced through conciliation agreements or consent decrees of the kind involved in this case, where the employer agrees to take broad remedial steps to eradicate discrimination. The aggrieved individual, on the other hand, is primarily interested in securing specific personal relief of the kind Riddle is seeking in her private action against Cerro.

27

Id. at 922-23. Although the suits against Pemco also differ insofar as the private suit came first, that fact makes the case for a finding of privity even weaker. After all, since the EEOC is capable of seeking broader relief than an individual plaintiff may achieve, if there is no privity when the narrower suit follows the broader claim, it makes no sense for there to be privity when the broader suit comes later. In addition to the EEOC's own broad mandate, there are also 165 or more African-American employees of Pemco who did not participate in the original suit (though they might have been covered by it had the plaintiffs not dropped their class action due to Pemco's opposition).

Urging us not to follow the precedents working against it, Pemco argues that this is a case of first impression because the private suit was ended with a jury verdict, while most of the other relevant previous cases involving the EEOC were settled or arbitrated. Pemco points particularly to Huttig Sash, which was voluntarily dismissed, and in which the court, in denying privity, warned that "an employer might seek to settle a particular individual's grievance in order to prevent the EEOC from bringing suit on other discriminatory practices discovered in investigating the original charge." Huttig Sash, 511 F.2d at 455. Pemco appeals to this concern to highlight the fact that it may be less of a worry when the prior action is resolved by a jury verdict rather than by mutually agreed-upon

settlement.  However, a similar danger exists even when the prior action is fully contested to a jury verdict, because the private plaintiffs might have fewer resources, less experienced or able attorneys, or weaker legal claims than does the EEOC.

As this review of the case law makes abundantly clear, the overwhelming weight of precedent in this Circuit and elsewhere weighs heavily against finding privity between the EEOC and the private plaintiffs.  The EEOC's comprehensive mandate and authority to petition for broad injunctive and pecuniary relief stands in stark contrast to the interests of individual plaintiffs in employment actions.

Finally, our holding is particularly warranted in light of the equities of this case, which weigh strongly against a finding of privity.  As Justice Stone put it, "[i]t is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."  Hansberry v. Lee, 311 U.S. 32, 40, 615 S. Ct. 115, 117 (1940) (citing Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565 (1877)).  Pemco did its best to keep the EEOC out of the original litigation, objecting strenuously that allowing it in as a party would create an unduly burdensome trial and "powerfully" prejudice the defendant.  Now Pemco is trying to bind the EEOC to the adverse result in the suit

that it successfully kept the EEOC from participating in.  That result would, we think, set a grossly inequitable precedent: it would open the door for defendants to seek to keep the EEOC out of private litigation, and then try to preclude the EEOC -- which may have more resources and effective legal representation, and therefore a better chance of winning at trial, than private plaintiffs do -- from suing on its own.  Allowing the resolution of a private suit to bar a federal agency's separate action "would impose an onerous and extensive burden upon the United States to monitor private litigation in order to ensure that possible mishandling of a claim by a private plaintiff could be corrected by intervention."  East Baton Rouge Parish Sch. Bd., 594 F.2d at 58.  This could severely curtail the enforcement powers of the EEOC and other governmental agencies by allowing the dismissal of their cases due to the result of litigation over which they have no control.  In this case the result we reach is not difficult because we can find neither the indicia of "virtual representation" nor those of "control."

In short, we are persuaded that the district court clearly erred in finding privity between the EEOC and the Thomas plaintiffs.  Moreover, it seems to us wholly inequitable to hold the EEOC bound by the result in a case that it was not allowed to take part in.  Because there is no privity between the parties, we need not and do not examine the other factors necessary to find res judicata or collateral

30

estoppel. The district court, in entering judgment against the EEOC, noted wryly that "[a]fter a sufficient number of battles, even the Hatfields and McCoys put down their guns." Slip op. at 7. In this case, however, the district court erroneously prevented the McCoys from picking up their guns in the first place.

REVERSED and REMANDED.