[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 5, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10911
Non-Argument Calendar

_____

D. C. Docket No. 07-00486-CV-1-TWT

WYLENE DINKINS,

Plaintiff-Appellant,

versus

MICHAEL O. LEAVITT,
Secretary, Department of
Health and Human Services,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(November 5, 2008)**

Before TJOFLAT, BLACK and FAY, Circuit Judges.

PER CURIAM:

Wylene Dinkins appeals <u>pro se</u> the district court's grant of summary judgment to Michael O. Leavitt, Secretary, Department of Health and Human Services, in an action brought pursuant to 42 U.S.C. § 1981, 5 U.S.C. § 552a, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16, and Georgia state law. First, Dinkins argues that the court erred by concluding that her claims were barred by the doctrine of <u>res judicata</u> and that, as a result of that error, Dinkins' due process and equal protection rights were violated. Second, Dinkins contends that the court erred in determining that equitable tolling, because of Dinkins' mental health and the ineffective assistance of counsel she received, did not prevent the operation of <u>res judicata</u> to Dinkins' claims. Third, Dinkins contends that the district court judge, by failing to recuse himself, violated Canon 2 of the Model Code of Judicial Conduct because the judge demonstrated "impropriety" and was unable to conduct a proper and unbiased review of Dinkins' claims. The government contends that we should dismiss Dinkins' appeal of the district court decisions concerning Dinkins' first and second lawsuits ("Dinkins I" and "Dinkins II" respectively) because Dinkins failed to timely appeal those decisions. For the reasons set forth more fully below, we affirm in part and dismiss in part.

## I. FACTS

Dinkins, an African-American female, was employed as a GS-9 Health Communications Specialist in the Centers for Disease Control's ("CDC") Health Communications Branch of the Office of Smoking and Health from February 1999 until February 2002, when she was granted a medical disability separation effective October 18, 2003.

On April 10, 2003, Dinkins filed her first judicial complaint in Dinkins I alleging Title VII claims of disparate treatment, hostile work environment, and retaliation, on the ground of non-selection for eight different positions for which she had applied. On September 10, 2004, the district court dismissed Dinkins' complaint for defective service. On January 30, 2004, while Dinkins I was still pending, Dinkins filed the complaint in Dinkins II, in which she raised the same issues against the same defendant, including: (a) racial discrimination, in violation of 42 U.S.C. § 1981; (b) employment discrimination, in violation of Title VII; (c) conspiracy to deprive rights, in violation of 42 U.S.C. § 1985; and (d) intentional infliction of emotional distress, in violation of Georgia law. The factual premise for the allegations in the Dinkins II complaint arose out of events that occurred from February 1999 to February 2002. On March 11, 2005, the district court allowed Dinkins to cure the defective service issues in the complaint in Dinkins II, but dismissed Dinkins' state law claim and determined that Dinkins

3

had abandoned her §§ 1981 and 1985 claims by failing to respond to the government's motion for summary judgment. On May 4, 2005, the government filed a motion for summary judgment on the remaining issues. On September 28, 2005, the district court determined that Dinkins failed to meet her burden of presenting evidence that would support her claim of discrimination due to a hostile work environment, retaliation, or disparate treatment, and the final judgment granting summary judgment to the government was rendered on September 29, 2005.

Then, on February 27, 2007, Dinkins filed the instant 78-page pro se complaint in which she alleged (1) racial discrimination, (2) hostile work environment, (3) disparate treatment, (4) malicious slander, (5) defamation of her character, (6) violations of her privacy, (7) intentional infliction of emotional distress, and (8) retaliation. Dinkins argued in her complaint that she was entitled to equitable tolling with respect to her claims in light of the severity of her physical and mental incapacitation. She also claimed that her attorney's misconduct entitled her to equitable tolling. The government filed a motion to dismiss, or in the alternative, for summary judgment.

In his report and recommendation ("R&R"), the magistrate judge recommended granting the government's motion, which the magistrate construed

as a motion for summary judgment. According to the magistrate, all of Dinkins' claims in her complaint were barred by res judicata because they had already been litigated or had arisen from the same factual predicate as those in Dinkins II. First, the magistrate concluded that Dinkins' current Title VII retaliation, hostile work environment, and disparate treatment claims were identical to the Title VII claims she raised in the earlier complaint. The magistrate concluded that the lawsuit in Dinkins II resulted in a final judgment on the merits entered by a court of competent jurisdiction for res judicata purposes. Further, the magistrate noted, the parties in both Dinkins' suits were identical, even though the name of the Secretary of the Department of Health had changed. Second, Dinkins had previously abandoned her § 1981 claims and the state law claim of intentional infliction of emotional distress, and, therefore, the magistrate found that those claims were barred by res judicata because they were available in the prior suit and should have been raised then. Third, Dinkins' newly asserted miscellaneous Title VII claims arose out of the same nucleus of operative facts as Dinkins' previous Title VII claims. Fourth, the magistrate concluded that Dinkins should have raised her Privacy Act claim in her prior civil action, as the factual predicate for that claim existed at the time of her previous lawsuit. Fifth, Dinkins' state law claims for defamation and slander were barred by res judicata because they also arose from

5

the same factual predicate as Dinkins' prior Title VII hostile work environment claim.

The magistrate determined that equitable tolling based on misconduct during the administrative proceeding and misconduct as a result of the actions by Dinkins' former attorney did not prevent a res judicata finding because the doctrines were used for different purposes. Further, the magistrate noted that, even if Dinkins had meant to argue that a different equitable principle applied, such an argument would still fail.

In its January 11, 2008, order, the district court adopted the R&R and granted the government's motion for summary judgment. The court stated that, for the reasons set forth in the R&R, all of Dinkins' claims were barred by res judicata, and Dinkins' mental incompetence did not authorize any exceptions. On February 14, 2008, the clerk entered judgment, and Dinkins filed a notice of appeal. In her 20-page notice of appeal, Dinkins stated that she was appealing under Federal Rule of Civil Procedure 60(b) to obtain relief from the May 11, 2004, September 27, 2004, and January 11, 2008, judgments.

## II. Law & Analysis

### A. Jurisdiction to Review Dinkins' First and Second Judicial Complaints

We review questions regarding our subject matter jurisdiction de novo.

Brown v. Snow, 440 F.3d 1259, 1262 (11th Cir. 2006).

"An appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4."  Fed.R.App.P. 3(a)(1).  Rule 4 provides that, "[w]hen the United States or its officer or agency is a party, the notice of appeal may be filed by any party within 60 days after the judgment or order appealed from is entered."  Fed.R.App.P. 4(a)(1)(B).  "[A] timely filed notice of appeal is prerequisite to this Court's jurisdiction."  Dresdner Bank AG v. M/V Olympia Voyager, 465 F.3d 1267, 1271 (11th Cir. 2006).  Rule 60(b) provides for relief from a judgment, order, or proceeding on the basis, in pertinent part, for mistake, newly discovered evidence, or fraud.  Fed.R.Civ.P. 60(b)(1)-(3).

Dinkins was required to file a notice of appeal of the district court's judgments of September 10, 2004 in Dinkins I and September 29, 2005 in Dinkins II no later than 60 days after entry of each judgment.[1]  See Fed.R.App.P. 4(a)(1)(B).  Dinkins' instant notice of appeal, filed on February 25, 2008,

---

[1] We note that, although in their briefs, both parties refer to the district court's "May 11, 2005," judgment, the district court actually dismissed Dinkins' complaint in Dinkins I on September 10, 2004.  With respect to the action in Dinkins II, the court, on March 11, 2005, granted in part the government's motion to dismiss, and it dismissed Dinkins' state law claims.  In the same order, the court determined that Dinkins had abandoned her §§ 1981 and 1985 claims.  The March 11, 2005, order became final on September 29, 2005, when the clerk entered final judgment on Dinkins II.  Thus, it is unclear to which order the parties actually refer.  However, Dinkins failed to timely appeal either the September 10, 2004, judgment or the September 29, 2005, judgment.

7

references those two decisions, but it is timely only with respect to the judgment entered on February 14, 2008.  See id..  As such, we lack jurisdiction to review the district court's earlier judgments.  See Fed.R.App.P. 4(a)(1)(B); See Dresdner Bank AG, 465 F.3d at 1271.  Similarly, to the extent that Dinkins is appealing the district court's March 11, 2005, order in Dinkins II, her February 25, 2008, notice of appeal is untimely because it was filed more than 60 days after the order became final.  See Fed.R.App.P. 4(a)(1)(B).  Further, Dinkins' reliance upon Rule 60(b) is procedurally improper because she did not file a Rule 60(b) motion in the district court.  See Fed.R.Civ.P. 60(b).  Accordingly, we dismiss Dinkins' appeal of the court's September 10, 2004, and September 29, 2005, judgments and the March 11, 2005, order.

## B.  Whether Dinkins' Claims Are Barred by Res Judicata

We "review the district court's grant of summary judgment de novo, applying the same legal standards as the district court."  Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007).  "Summary judgment is proper if, when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Id. (citing Fed.R.Civ.P. 56(c)).  We review de novo a district court's determination of res judicata.  EEOC v. Pemco Aeroplex, Inc.,

8

383 F.3d 1280, 1285 (11th Cir. 2004).

"Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999). "The purpose behind the doctrine of res judicata is that the full and fair opportunity to litigate protects a party's adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Id. (quotations and alteration omitted). Four elements are required for res judicata to bar a subsequent suit: "(1) there must be a final judgment on the merits; (2) the decision must be rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases." I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986). "A final decision is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983) (citation omitted). A dismissal without prejudice is not an adjudication on the merits and thus does not have a res judicata effect. See Hughes v. Lott, 350 F.3d 1157, 1161 (11th Cir. 2003).

As an initial matter, Dinkins does not contest that: (1) the previous decision

9

in Dinkins II was rendered by a court of competent jurisdiction; (2) the parties were identical in both Dinkins II and the instant case; and (3) the same cause of action is involved in both cases. Instead, she argues that the doctrine of res judicata was erroneously applied to the instant case because there was no previous "final judgment on the merits." Thus, we do not discuss the other three res judicata elements.

The district court dismissed Dinkins' complaint in Dinkins I on September 10, 2004, because of defective service. In its September 29, 2005, decision in Dinkins II, the court acknowledged that the earlier decision in Dinkins I was not a "final judgment on the merits" for res judicata purposes when it rejected the government's argument that its motion for summary judgment should be granted on that ground. In the September 29, 2005, decision in Dinkins II, the court dismissed the action "on the merits" when it found: (1) the circumstances were not so severe and pervasive to alter the nature of the work environment such to support a hostile work environment claim; (2) Dinkins failed to show a causal link between her EEO complaint and the government's failure to promote her such to support a retaliation claim; (3) Dinkins failed to make out a prima facie case of disparate treatment for five of the eight job vacancies for which she was not selected; and (4) Dinkins failed to rebut any of the government's proffered legitimate reasons for

10

its selection choices for the remaining three job vacancies. Thus, the September 29, 2005, judgment in Dinkins II was a "final judgment on the merits" for <u>res judicata</u> purposes. See <u>Pitney Bowes, Inc.</u>, 701 F.2d at 1368.

Although Dinkins contends that the September 10, 2004, dismissal of her complaint in Dinkins I prevents the application of <u>res judicata</u> in the instant case, it is the September 29, 2005, judgment in Dinkins II that forms the basis for the "final judgment on the merits" for <u>res judicata</u> purposes in the instant action. Thus, the court did not err in applying the doctrine of <u>res judicata</u> on this ground. See <u>I.A. Durbin, Inc.</u>, 793 F.2d at 1549. As a result, Dinkins' due process and equal protection rights were not violated. Accordingly, we affirm this issue.

## C. Whether Equitable Tolling Prevents the Application of <u>Res Judicata</u>

"The question of whether equitable tolling applies is a legal one subject to <u>de novo</u> review." <u>Cabello v. Fernandez-Larios</u>, 402 F.3d 1148, 1153 (11th Cir. 2005). As previously mentioned, we review <u>de novo</u> a district court's determination of <u>res judicata</u>. <u>Pemco Aeroplex, Inc.</u>, 383 F.3d at 1285. "The doctrine of equitable tolling permits courts to deem filings timely where a litigant can show that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way." <u>Jackson v. Astrue</u>, 506 F.3d 1349, 1353 (11th Cir. 2007) (brackets, quotations, and citations omitted). "[T]raditional equitable tolling principles

11

require a claimant to justify her untimely filing by a showing of extraordinary circumstances." Id.

To the extent that Dinkins' asserts that equitable tolling principles exempt her claims from the application of res judicata, her argument is without merit. The district court dismissed Dinkins' claims on the basis of res judicata principles. Dinkins' claims were not dismissed because they were untimely. As such, equitable tolling principles are not applicable here, and, thus, Dinkins' mental health and ineffective assistance of counsel claims do not bar the application of res judicata. See Jackson, 506 F.3d at 1353. Accordingly, we affirm this issue.

**D. Whether Dinkins Waived her "Impropriety" Arguments**

Although she did argue that the district court judge made several legal errors, Dinkins failed to seek recusal of the district court judge in the proceedings below. Thus, Dinkins has waived this issue.[2] Narey v. Dean, 32 F.3d 1521, 1526-27 (11th Cir. 1994). Nonetheless, Dinkins "impropriety" argument fails even if the claim were properly before us.

"Canon 2 [of the Code of Conduct for United States Judges] tells judges to 'avoid impropriety and the appearance of impropriety in all activities,' on the

---

[2] Although we recognize five exceptions to the rule that "appellate courts generally will not consider an issue or theory that was not raised in the district court," none of those exceptions apply here. See Narey, 32 F.3d at 1526-27.

12

bench and off." United States v. Microsoft Corp., 253 F.3d 34, 107 (D.C. Cir. 2001). Pursuant to 28 U.S.C. § 455(a), "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "To disqualify a judge under § 455(a), the bias 'must stem from extrajudicial sources, unless the judge's acts demonstrate such pervasive bias and prejudice that it unfairly prejudices one of the parties.'" United States v. Berger, 375 F.3d 1223, 1227 (11th Cir. 2004) (quotation omitted). An adverse ruling does "not provide a party with a basis for holding that the court's impartiality is in doubt." Id. (citation omitted).

Here, Dinkins does not present any evidence of extrajudicial bias on the part of the court, which would provide a basis for recusal. See 28 U.S.C. § 455(a); Berger, 375 F.3d at 1227. Instead, she continues to assert that the court acted improperly by acknowledging in its September 29, 2005, decision in Dinkins II that the earlier decision in Dinkins I was not a "final judgment on the merits," but then applying the doctrine of res judicata in the instant case. However, as discussed more thoroughly above, Dinkins fails to recognize that the September 29, 2005, decision was a final judgment on the merits, and it is this decision that forms the basis for barring her current claim on res judicata grounds. Accordingly, the district court judge did not err by failing to sua sponte recuse himself, and we

13

affirm this issue.

**AFFIRMED IN PART, DISMISSED IN PART.**