IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
 SEAN A. BRADY, )
 Respondent, )
 )
 v. ) WD84470
 )
 JOHN R. ASHCROFT and DAVID ) FILED: January 18, 2022
 M. MINNICK, )
 Appellants. )
 Appeal from the Circuit Court of Cole County
 The Honorable Jon E. Beetem, Judge
 Before Special Division: Alok Ahuja, P.J.,
 Mark D. Pfeiffer, J., and W. Ann Hansbrough, Sp.J.
 The Securities Division of the Office of the Secretary of State filed an

administrative petition requesting that the Commissioner of Securities order civil

penalties, restitution, and other remedies against Sean A. Brady. The petition

alleged that Brady had violated multiple provisions of the Missouri Securities Act of
2003, § 409.1-101 et seq.,1 while acting as an investment adviser.

 While the Securities Division’s administrative petition was pending, Brady

filed a petition for a writ of prohibition in the Circuit Court of Cole County,

contending that the Commissioner lacked authority to take enforcement action

against him. The circuit court granted a writ of prohibition barring the

Commissioner from proceeding. The circuit court concluded that the Commissioner

lacked regulatory jurisdiction over Brady because he was no longer a “registrant”

 1 Unless otherwise indicated, statutory citations refer to the 2016 edition of the
Revised Statutes of Missouri, updated by the 2021 Cumulative Supplement.
subject to the strictures of the Securities Act. The court also concluded that the

administrative enforcement action was barred because Brady had reached a

settlement with the private investors he was accused of defrauding.

 The Commissioner appeals. Because we conclude that the Commissioner has

statutory authority to proceed against Brady on at least some of the legal theories

asserted in the Securities Division’s petition, we reverse the circuit court’s

judgment.

 Factual Background
 We recite the underlying facts as alleged in the Securities Division’s

administrative petition. We assume these facts to be true for purposes of the

present appeal.

 Between 2012 and 2017, Brady was employed as an investment adviser

representative and broker-dealer agent with First Allied Securities, Inc. Brady was

based in the St. Louis area. He was registered with the Commissioner of Securities

under the Securities Act.

 First Allied terminated Brady’s employment on October 20, 2017, based on

Brady’s violations of First Allied policies and procedures, including falsifying client

signatures on documents. First Allied filed a Uniform Termination Notice for

Securities Industry Registration (Form U-5) with the Financial Industry Regulatory

Authority (“FINRA”), a private investment-industry self-regulatory agency. FINRA

investigated Brady’s termination, and subsequently barred him from the securities

industry on May 20, 2018. First Allied’s termination of Brady’s employment caused

his registration with the Commissioner to become ineffective. See § 409.4-404(c).

 Brady’s alleged acts of misconduct involve his dealings with ten investors,

nine of whom were Missouri residents, and one a Florida resident. Brady and First

Allied entered into settlement agreements with all ten of the affected investors in
2019. Each of the settlements contained a broad release clause, in which the

 2
investors released all claims against Brady and First Allied based on the underlying

transactions at issue here, on their own behalf and on behalf of “anyone claiming

through or under them.”

 On April 22, 2020, the Enforcement Section of the Secretary of State’s

Securities Division filed its Petition for Order to Cease and Desist and Order to

Show Cause Why Restitution, Civil Penalties, Costs and Other Administrative

Relief Should Not Be Imposed. The petition was filed before the Commissioner. See

15 CSR 30-55.010(1)(A). The Securities Division’s claims relate to transactions

which occurred between 2010 and September 2017, in which Brady recommended

and sold various real estate investment trusts (“REITs”) and variable annuities to

the ten investors. The petition alleged that Brady: forged the investors’ signatures

on transaction documents; invested the investors’ money in REITs and variable

annuities without the investors’ knowledge or consent; directed the investors’ funds

to investments which were unsuitable given the investors’ investment objectives

and risk tolerance; and made misrepresentations to the investors concerning the

financial instruments in which he advised them to invest. The petition alleged that

Brady’s actions constituted dishonest and unethical practices in violation of § 409.4-

412(d), employed a device to defraud in violation of § 409.5-502, and subjected
Brady to discipline under § 409.6-604. (In the remainder of this opinion we

frequently omit the reference to chapter 409 in our citation to relevant provisions of

the Securities Act.)

 The Securities Division’s administrative petition requested multiple forms of

relief. It prayed that the Commissioner order Brady to cease and desist from

engaging in similar misconduct. It also requested that the Commissioner order

Brady to pay civil penalties for violations of §§ 4-412(d)(5), 4-412(d)(13), and 5-502.

The petition requested that Brady be ordered “to pay restitution for any loss” with
interest, and that he be ordered “to disgorge at least $422,872 as profits in the form

 3
of commissions” arising from his violations of the Securities Act. Finally, the

petition prayed that the Securities Division recover from Brady its costs of

investigation, and “such other relief as [the Commissioner] deems just.”

 Brady filed a Motion to Dismiss the Securities Division’s petition on July 10,

2020, arguing that the Commissioner lacked subject matter jurisdiction, that the

Securities Division’s claims were barred by the statute of limitations, and that the

Securities Division should not be allowed to obtain restitution for investors in

excess of the settlement amounts to which those investors had previously agreed.

The Commissioner denied Brady’s Motion to Dismiss on July 22, 2020. The case

was scheduled for a final administrative hearing commencing on August 25, 2020.

 On August 6, 2020, Brady filed a petition for a writ of prohibition in the

Circuit Court of Cole County, seeking to prohibit the Commissioner from conducting

further proceedings in the administrative enforcement action. Following briefing

and argument, the circuit court granted a writ of prohibition barring the

Commissioner from proceeding further in the administrative case. The circuit court

held that the Commissioner did not have jurisdiction over Brady under § 4-412(c),

because the statute only applies to current “registrants,” or those who have held

registration within the year prior to the filing of an administrative petition. The
circuit court also held that Missouri’s common law rule against double recovery

prevented the Commissioner from seeking relief on behalf of the investors whom

Brady had defrauded, given that those investors had settled their personal claims

directly with First Allied and Brady. The circuit court ordered that the

Commissioner and the Secretary of State “cease, desist, and refrain from taking any

further action against Relator Sean A. Brady in the Enforcement Action other than

dismissing the Enforcement Action Petition and all of its claims with prejudice.”

 The Commissioner appeals.

 4
 Standard of Review
 “The writ of prohibition, an extraordinary remedy, is to be used with great

caution and forbearance and only in cases of extreme necessity.” State ex rel.

Douglas Toyota III, Inc. v. Keeter, 804 S.W.2d 750, 752 (Mo. 1991) (citing Derfelt v.

Yocom, 692 S.W.2d 300, 301 (Mo. 1985)). The Missouri Supreme Court has limited

“the use of prohibition to three, fairly rare, categories of cases.” State ex rel.

Riverside Joint Venture v. Missouri Gaming Comm’n, 969 S.W.2d 218, 221 (Mo.

1998) (citing State ex rel. Noranda Aluminum, Inc. v. Rains, 706 S.W.2d 861, 862–

63 (Mo. 1986)).

 First, prohibition lies where a judicial or quasi-judicial body lacks
 personal jurisdiction over a party or lacks jurisdiction over the subject
 matter the body is asked to adjudicate. Second, prohibition is
 appropriate where a lower tribunal lacks the power to act as
 contemplated. Third, prohibition will issue in those very limited
 situations when an “absolute irreparable harm may come to a litigant
 if some spirit of justifiable relief is not made available to respond to [an
 administrative agency’s or] a trial court's order,” or where there is an
 important question of law decided erroneously that would otherwise
 escape review on appeal and the aggrieved party may suffer
 considerable hardship and expense as a consequence of the erroneous
 decision.
Id. (citations omitted); see also State ex rel. Zimmerman v. Blanc, 548 S.W.3d 396,

401 (Mo. App. W.D. 2018).

 A writ of prohibition is discretionary. State ex rel. Rosenberg v. Jarrett, 233

S.W.3d 757, 760 (Mo. App. W.D. 2007). The circuit court’s judgment granting such

a writ is accordingly reviewed for an abuse of discretion. A circuit court abuses its

discretion when its “ruling is clearly against the logic of the circumstances then

before the court and is so unreasonable and arbitrary that it shocks the sense of

justice and indicates a lack of careful, deliberate consideration.” Hancock v. Shook,

100 S.W.3d 786, 795 (Mo. 2003). “If reasonable persons can differ as to the

propriety of the trial court's action, then it cannot be said that the trial court abused
its discretion.” Id. (citation omitted).

 5
 “A trial court can abuse its discretion . . . through the application of incorrect

legal principles. . . . [W]hen the issue is primarily legal, no deference is warranted

and appellate courts engage in de novo review.” State v. Carpenter, 605 S.W.3d 355,

359 (Mo. 2020) (quoting State v. Taylor, 298 S.W.3d 482, 492 (Mo. 2009)); see also

Bohrn v. Klick, 276 S.W.3d 863, 865 (Mo. App. W.D. 2009) (“the trial court

necessarily abuses its discretion where its ruling is based on an erroneous

interpretation of the law” (citation omitted)).

 Discussion
 I.
 As a preliminary matter, we address the Commissioner’s contention that the

circuit court abused its discretion in granting a writ of prohibition, because Brady

failed to exhaust his administrative remedies, and had an adequate remedy by

seeking judicial review following the completion of the administrative proceedings.

 As a “general rule,” “a party must exhaust all administrative remedies before

the party may seek judicial review.” Donaldson v. Mo. State Bd. of Reg’n for the

Healing Arts, 615 S.W.3d 57, 65 (Mo. 2020); see also, e.g., State ex rel. Robison v.

Lindley-Myers, 551 S.W.3d 468, 472-73 (Mo. 2018). However, as the cases cited

above in the Standard of Review section make clear, an extraordinary writ may be
available to arrest ongoing administrative proceedings in certain limited

circumstances: where the administrative agency lacks jurisdiction or wholly lacks

the authority to act; or where irreparable harm may occur to the petitioner by being

forced to submit to the administrative proceeding itself.

 Our recent decision in Zimmerman, 548 S.W.3d 396, provides a paradigm

example. In Zimmerman, this Court affirmed the circuit court’s grant of a writ of

prohibition. The writ interrupted an ongoing administrative proceeding: it

prohibited the State Tax Commission from deciding taxpayers’ appeals from
decisions of county boards of equalization, in which the taxpayers challenged the

 6
assessed valuation of their properties. This Court disagreed with the circuit court’s

determination that the taxpayers lacked statutory authority to appeal to the

Commission. Id. at 405. Nevertheless, we held that the circuit court’s grant of a

writ of prohibition was justified, because even though the State Tax Commission

had authority to hear the taxpayers’ appeal, “the Commission had no authority to

afford the remedy [the taxpayers] requested” – modification of their property-tax

assessments. Id. at 404.

 The taxpayers in Zimmerman argued that a writ of prohibition was

unwarranted, because the county assessor could seek judicial review of any adverse

decision by the State Tax Commission, after the administrative proceedings had

concluded. We rejected this argument, because the Tax Commission proceeding was

an exercise in futility to which the assessor should not be required to submit.

 Though we agree that Assessor could have appealed any adverse
 Commission decision, and though the availability of a remedy on
 appeal can be a basis for denying a discretionary writ of prohibition,
 the availability of a remedy on appeal does not preclude a trial court
 from exercising its discretion to grant a permanent writ of prohibition.
 Instead, . . . prohibition is appropriate to prevent unnecessary,
 inconvenient, and expensive litigation, even though it is axiomatic that
 appellate review would be available at the conclusion of the litigation.
 The issue is not strictly whether an appeal would have been available
 without the issuance of a writ, but whether the remedy of appeal
 would have been adequate.
 Here, the trial court found that Assessor's appellate remedy
 would be inadequate given the high number of properties involved in
 this proceeding. That finding, coupled with the fact that Taxpayers
 were not entitled to any of the relief they sought from the Commission
 as a matter of law, supports the trial court's conclusion that requiring
 Assessor to litigate Taxpayers' appeals before the Commission was not
 an adequate remedy for Assessor.
Id. at 405-06 (citations omitted).

 Although a court-issued writ may be available in limited circumstances,
judicial interference with ongoing administrative proceedings through the issuance

 7
of extraordinary writs should be the exception and not the rule. State ex rel.

Riverside Joint Venture v. Missouri Gaming Commission, 969 S.W.2d 218 (Mo.

1998), illustrates the relevant distinction between arguments which may justify

issuance of a writ, and issues which should be addressed at the conclusion of

administrative proceedings through the usual judicial review process. In Riverside,

riverboat gaming companies argued that the Gaming Commission had no authority

to take disciplinary action against them for their purported violation of provisions of

state law (rather than for violation of the terms of their licenses themselves). The

Supreme Court recognized that, “[i]f the Commission does not have authority to

impose sanctions for this violation [of state law] under the [gaming] statute,

prohibition is the appropriate remedy to prohibit the Commission from proceeding

to hearing.” Id. at 220. Thus, Riverside recognized that, if the Commission wholly

lacked authority to proceed against the gaming boat operators, then a writ might be

appropriate (even though the operators had not fully exhausted the administrative

process).2

 Riverside rejected the gaming companies’ claim that the Gaming Commission

lacked statutory authority to address their alleged violations of state law. 969

S.W.2d at 221. The Court then explained that the other issues the licensees sought
to raise could be addressed in judicial review proceedings after the Gaming

 2 See also, e.g., State ex rel. AG Processing Inc. v. Thompson, 100 S.W.3d 915,
920 (Mo. App. W.D. 2003) (“Where a presiding officer [in an administrative proceeding] is
wholly lacking in jurisdiction to hear a case, an appeal is not an adequate remedy because
any action by the officer ‘is without authority and causes unwarranted expense and delay to
the parties involved,’” and “a petition for writ of prohibition is a proper way to challenge an
administrative decision-maker’s participation in a case” (citation omitted)); Southwestern
Bell Tel. Co. v. Mo. Comm’n on Human Rights, 863 S.W.2d 682, 686 (Mo. App. E.D. 1993)
(“Writs of prohibition are frequently employed to prevent boards, commissions, and other
public bodies exercising quasi-judicial powers from performing unauthorized acts or acts in
excess of the authority vested in them.”).

 8
Commission’s final decision, and were not appropriate for relief by way of a writ of

prohibition.

 As we have previously concluded, the Commission has subject
 matter authority to consider a license holder's failure to comply with
 the law. In addition, the Commission has the authority to act in
 furtherance of that power. Its consideration of the issues raised in its
 notice to the license holders is within the grant of authority to the
 Commission in section 313.812.14. As to the [“irreparable harm”
 justification for writ relief], the Commission has the authority to make
 a mistake of law in its deliberations and decision provided that
 decision does not irreparably harm a party. Section 536.100, RSMo
 1994, permits judicial review of a decision of the Commission. Any
 decision of the Commission may be stayed on appropriate grounds
 either by the Commission or by a reviewing court pending review.
 Section 536.120, RSMo 1994. These safeguards avoid irreparable
 harm to a license holder receiving an adverse decision of the
 Commission and make prohibition an improper remedy under these
 circumstances. The trial court's decision to employ prohibition to
 pretermit the Commission's consideration of the issues before it . . .
 falls outside the recognized purposes for a writ of prohibition. The trial
 court erred in making its preliminary writ of prohibition absolute.
Id. at 221-22.

 A writ of prohibition against ongoing administrative proceedings is an

extraordinary measure which should be employed only if the agency wholly lacks

power to act as contemplated, or if irreparable harm would otherwise occur. If a

writ petition satisfies those limitations, however, the petitioner need not exhaust

their administrative remedies before seeking judicial intervention.

 II.
 The circuit court relied on two grounds to justify the issuance of a permanent

writ of prohibition. First, the circuit court found that the Commissioner could not

take enforcement action against Brady under § 409.4-412(c), because that statute

only applies to persons who are current “registrants” under the Securities Act, or

those who have withdrawn their registration in the year prior to the filing of an
enforcement action. See § 409.4-409. Second, the court found that, to the extent

 9
that the Securities Division sought to proceed under § 409.6-604(d), its petition was

barred because the affected investors had settled their own private claims against

Brady and First Allied. Given the private settlements, the circuit court concluded

that the common-law rule prohibiting double recoveries barred the Securities

Division’s enforcement action.

 Section 409.4-412(c) provides:

 If the commissioner finds that the order is in the public interest
 and subsection (d)(1) to (6), (8), (9), (10), or (12) and (13) authorizes the
 action, an order under this act may censure, impose a bar, or impose a
 civil penalty in an amount not to exceed twenty-five thousand dollars
 for each violation on a registrant and, if the registrant is a broker-
 dealer or investment adviser, on any partner, officer, or director, any
 person having similar functions, or any person directly or indirectly
 controlling the broker-dealer or investment adviser.3
Section 409.4-409 provides:

 Withdrawal of registration by a broker-dealer, agent,
 investment adviser, or investment adviser representative becomes
 effective sixty days after the filing of the application to withdraw or
 within any shorter period as provided by rule adopted or order issued
 under this act unless a revocation or suspension proceeding is pending
 when the application is filed. If a proceeding is pending, withdrawal
 becomes effective when and upon such conditions as required by rule
 adopted or order issued under this act. The commissioner may
 institute a revocation or suspension proceeding under section 409.4-
 412 within one year after the withdrawal became effective
 automatically and issue a revocation or suspension order as of the last
 date on which registration was effective if a proceeding is not pending.

 3 In this opinion we cite to and quote the current versions of the relevant
statutory provisions. See note 1, above. In 2020, the General Assembly amended §§ 409.4-
412 and 409.6-604 to increase the amount of the civil penalties which could be imposed. See
S.B. 599, 100th Gen. Assembly, 2d Reg. Session (2020). Those amendments became
effective on August 28, 2020 – after Brady’s underlying conduct, and after the filing of the
Securities Division’s administrative petition. Although we quote the current versions of the
relevant statutes, we take no position as to the amount of any penalty which could be
imposed against Brady, if the Commissioner were to find that he had in fact committed any
of the statutory violations alleged by the Securities Division.

 10
 Based on these provisions, the circuit court concluded that the Commissioner

could only maintain enforcement actions under § 4-412(c) against individuals who

were either current registrants under the Securities Act, or persons who had

withdrawn their registration within the year prior to the filing of an enforcement

action. The circuit court found that Brady’s registration terminated with the

termination of his employment with First Allied in October 2017. See § 409.4-

402(c). Because the Securities Division’s petition was not filed until April 2020, the

circuit court concluded the Commissioner had no authority to proceed against Brady

under § 4-412(c).

 We need not review the circuit court’s conclusion that § 4-412(c) only

authorizes enforcement action against current, or recently-withdrawn,

“registrants.” As the circuit court recognized, the Securities Division’s petition

invokes both § 4-412(c) and § 6-604 as authority for this enforcement action.

Whether or not the Commissioner was entitled to proceed against Brady under § 4-

412(c), the Commissioner would be entitled to award much of the same relief, for

many if not all of Brady’s alleged acts of misconduct, under § 6-604. And § 6-604 is

not limited to “registrants” – even if § 4-412(c) is.

 Section 409.6-604(a) provides that the Commissioner may take enforcement
action if he:

 determines that a person has engaged, is engaging, or is about to
 engage in an act, practice, or course of business constituting a violation
 of this act or a rule adopted or order issued under this act or that a
 person has materially aided, is materially aiding, or is about to
 materially aid an act, practice, or course of business constituting a
 violation of this act or a rule adopted or order issued under this act
 ....
Section 409.6-604(d) provides that, in a proceeding brought under the section, the

Commissioner is authorized to:
 (1) Impose a civil penalty up to twenty-five thousand dollars
 for each violation;

 11
 (2) Order a person subject to the order to pay restitution for
 any loss, including the amount of any actual damages that may have
 been caused by the conduct and interest at the rate of eight percent per
 year from the date of the violation causing the loss or disgorge any
 profits arising from the violation;
 (3) In addition to any civil penalty otherwise provided by law,
 impose an additional civil penalty not to exceed fifteen thousand
 dollars for each such violation if the commissioner finds that a person
 subject to the order has violated any provision of this act and that such
 violation was committed against an elderly or disabled person.
In addition, § 409.6-604(e) provides that, “[i]n a final order, the commissioner may

charge the actual cost of an investigation or proceeding for a violation.”

 Section 6-604 is not limited to current or former “registrants,” but applies to

any “person” who has violated, is violating, or is about to violate the Securities Act

or its implementing regulations. The Securities Act’s definition of a “person” is

broad, and is plainly not limited to current or former registrants. See § 409.1-

102(20).

 Section 6-604 was intended to complement § 4-412, by authorizing

enforcement actions against persons not otherwise subject to a § 4-412 proceeding.

The Missouri Securities Act of 2003 is patterned after the Uniform Securities Act

drafted by the National Conference of Commissioners on Uniform State Laws. The

Official Comments to § 604 of the Uniform Securities Act make clear that § 604 was

intended to authorize enforcement actions against persons who are not subject to

§ 412.

 Sections 603 and 604 are intended to be available to the
 administrator against persons not subject to stop orders under Section
 306 or proceedings against registered broker-dealers, agents,
 investment advisers, or investment adviser representatives under
 Section 412. All persons or securities not subject to Section 306
 or 412 will be subject to Sections 603 and 604. A person must be
 covered by either (1) Sections 306 or 412 or (2) Sections 603 or
 604.

 12
Official Comment 2 (emphasis added). “When the legislature has adopted a model

act, the applicable comments of the drafting committee for the model act will often

be influential in the interpretation of the language of the statute adopted.” State v.

Porter, 241 S.W.3d 385, 391 (Mo. App. W.D. 2007) (citations omitted).

 Besides containing no reference to a “registrant,” §§ 6-604(d) and (e)

authorize a wide range of remedies, including the same $25,000 per violation civil

penalties authorized under § 4-412(c). Indeed, § 6-604(d)(3) authorizes heavier

sanctions: it authorizes double penalties if the victim of a violation is elderly or

disabled. In addition, §§ 6-604(d) and (e) authorize restitution for injured parties’

losses, disgorgement of the offender’s profits, and recovery of the agency’s costs of

investigation. See State ex rel. Lavender Farms, LLC v. Ashcroft, 558 S.W.3d 88, 94

(Mo. App. W.D. 2018) (noting that “[s]ection 409.6-604 provides the Commissioner

distinct remedies not available to a purchaser in a civil action,” including the power

to “order a party to cease and desist engaging in prohibited conduct, impose

monetary penalties, order restitution and disgorge profits, deny exemptions, and

charge the cost of the underlying securities investigation”).

 In this case, the Securities Division alleged that Brady’s misconduct violated

§ 409.4-412(d)(5), § 409.4-412(d)(13), and § 409.5-502. We put to one side whether
the Commissioner could sanction Brady in a § 6-604 action for violations of §§ 4-

412(d)(5) or (13) (which describe circumstances in which a registrant, or an

applicant for registration, may be subject to discipline). But whether § 6-604 can be

invoked in this case to remedy violations of § 4-412(d), it plainly can be employed to

enforce § 5-502, which provides:

 (a) It is unlawful for a person that advises others for
 compensation, either directly or indirectly or through publications or
 writings, as to the value of securities or the advisability of investing in,
 purchasing, or selling securities or that, for compensation and as part
 of a regular business, issues or promulgates analyses or reports
 relating to securities:

 13
 (1) To employ a device, scheme, or artifice to defraud
 another person; or
 (2) To engage in an act, practice, or course of business
 that operates or would operate as a fraud or deceit upon another
 person.
Like § 6-604 itself, § 5-502(a) is not limited to “registrants,” but applies to any

person who advises others concerning securities for compensation. Moreover, the

statute broadly proscribes the employment of a “device, scheme, or artifice to

defraud” by any compensated securities adviser. This broad prohibition on

fraudulent activity comprehends many, if not all, of the acts alleged in the

Securities Division’s petition.

 Sections 5-502 and 6-604 are not limited to “registrants” under the Securities

Act, and authorize the same types of relief, with respect to the same types of

misconduct, as § 4-412(c). Accordingly, it is unnecessary to decide whether an

action under § 4-412(c) is limited to persons who are current “registrants” under the

Securities Act, or to those who have withdrawn their registration within the prior

year. As explained in § I, above, judicial interference in ongoing administrative

proceedings through issuance of an extraordinary writ should be limited to

situations in which an agency wholly lacks jurisdiction or authority to act, or in

which irreparable harm would otherwise occur. In this case, even if the
Commissioner was not entitled to proceed under § 4-412(c) because Brady is not a

current or recent “registrant,” Brady would still be subject to an administrative

enforcement action under §§ 5-502 and 6-604 involving most of the same underlying

allegations of misconduct, and subjecting him to similar remedies. In such

circumstances, there is no justification for a writ of prohibition. As the Supreme

Court explained in Riverside, because he has statutory authority to proceed, the

Commissioner “has the authority to make a mistake of law in [his] deliberations
and decision,” and Brady can seek judicial review following the conclusion of the

 14
administrative process to challenge any allegedly erroneous legal conclusions. 969

S.W.2d at 221. We also note that, because the prohibited conduct and remedies

under §§ 4-412(c) and 6-604 are largely overlapping, the Commissioner may find it

unnecessary to rely on the authority granted by § 4-412(c) in his final order, even if

he orders relief against Brady. Therefore, it may ultimately be unnecessary for the

courts to ever address the scope of § 4-412(c) in this case.

 Judicial resolution of any issues concerning the scope of § 4-412(c) can await

the conclusion of the administrative proceeding, and the circuit court abused its

discretion by issuing a writ of prohibition on this basis.

 III.
 In addition to its conclusions concerning § 409.4-412(c), the circuit court also

held that the Commissioner had no authority to proceed under § 409.6-604, because

Brady had entered into private settlements with the ten investors whom the

Securities Division accused him of defrauding. The circuit court erred as a matter

of law in ruling that the investors’ private settlements wholly divested the

Commissioner of authority to proceed.

 Missouri applies the “common law rule that a plaintiff is entitled to only one

satisfaction for the same wrong.” Sanders v. Ahmed, 364 S.W.3d 195, 213 (Mo.

2012); see also, e.g., Ellison v. Fry, 437 S.W.3d 762, 776-77 (Mo. 2014). At the same

time, Missouri law also holds that persons who are not parties to a contract are not

generally bound by the agreement.

 In order for a party to be bound by a contract a court must find there
 was privity of contract. Privity of contract is the relationship between
 the parties to a contract, which allows them to sue one another but
 prevents a third party from doing so. “The doctrine of privity means
 that a person cannot acquire rights or be subject to liabilities arising
 under a contract to which he is not a party.” The doctrine is intended
 to shield contracting parties from unlimited liability and to prevent
 encumbering parties with duties not voluntarily assumed.

 15
Baisch & Skinner, Inc. v. Bair, 507 S.W.3d 627, 632 (Mo. App. E.D. 2016) (citations

omitted).

 Missouri courts have not applied these principles in the specific context we

face here: where both a private party, and a governmental enforcement agency,

seek remedies for a regulated entity’s acts of misconduct. Federal courts have

addressed this scenario in numerous cases, however. Those cases hold that a

private party’s settlement with a wrongdoer does not wholly bar a governmental

agency from seeking additional relief against the same wrongdoer, for the same

underlying misconduct. Thus, in U.S. Commodity Futures Trading Commission v.

Kratville, 796 F.3d 873 (8th Cir. 2015), the United States Court of Appeals for the

Eighth Circuit held that a district court could award relief to the Commodities

Futures Trading Commission (the “CFTC”) for statutory violations, even though the

individual investors who had been injured “had brought private lawsuits against

[the defendant], settled their cases for compensation, and signed releases.” Id. at

889. The Court held that the private-party settlements could not bar the CFTC

from seeking additional relief from the defendant, for the same underlying actions:

 Rarely will privity be found “between a private party in one
 action and a party in a later action when the party in the later action
 is a governmental agency.” Furthermore, “It is a well-established
 general principle that the government is not bound by private
 litigation when the government's action seeks to enforce a federal
 statute that implicates both public and private interests.” The
 doctrine of res judicata does not bar the government “‘from
 maintaining independent actions asking courts to enforce federal
 statutes implicating both public and private interests merely because
 independent private litigation has also been commenced or concluded.’”
 “[G]overnmental agencies have statutory duties, responsibilities, and
 interests that are far broader than the discrete interests of a private
 party.”
 . . . [T]he present case involves the CFTC [¶] seek[ing] to protect
 a public interest that far exceeds the interests of individual citizens.
 That is, the [CFTC] seeks to protect the integrity of a public market.

 16
 The continued integrity and hence vitality of that public market has
 huge implications for the national economy.
 Therefore, even though a private litigant “understandably” may
 believe it wise “to compromise claims to gain prompt and definitive
 relief,” such a settlement “does not further the broader national public
 interests represented by the [CFTC] and reflected in Congress's
 delegation of [the Act's] enforcement powers to the [CFTC.]” Indeed,
 and quite apart from whether the individual victims are satisfied with
 their private settlements, full and ample restitution, and other
 equitable remedies such as disgorgement of profits, serve distinct
 deterrence functions that are vital to the “national public interest.”
 Therefore, when private parties settle their disputes without the
 approval or consent of the [CFTC], those settlements cannot preclude
 the [CFTC] from later seeking additional or more full restitution or
 any other remedy.
Id. (citing and quoting EEOC v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1290-91 (11th

Cir. 2004); Sec'y of Labor v. Fitzsimmons, 805 F.2d 682, 692 (7th Cir. 1986) (en

banc); Herman v. S.C. Nat'l Bank, 140 F.3d 1413, 1426 (11th Cir. 1998); and CFTC

v. Comm'l Hedge Servs., Inc., 422 F. Supp. 2d 1057, 1060–61 (D. Neb. 2006)); see

also, e.g., California v. IntelliGender, LLC, 771 F.3d 1169, 1177-78 (9th Cir. 2014);

Linton v. Consumer Prot. Div., 225 A.3d 456, 467 (Md. 2020).4

 The same principles should apply here. Because the Commissioner of

Securities’ enforcement of the Missouri Securities Act of 2003 seeks to vindicate the

 4 The circuit court relied on In re Baldwin-United Corp., 770 F.2d 328 (2d Cir.
1985), to support its conclusion that the private settlements precluded the Commissioner
from taking enforcement action. Baldwin-United is distinguishable, however. That case
involved a trial court’s issuance of a preliminary injunction in connection with ongoing
efforts to settle a large number of consolidated private securities actions. The preliminary
injunction expressly limited the rights of state agencies to initiate enforcement action
involving the same underlying conduct. This case does not involve a similar court order
purporting to explicitly preclude state governmental enforcement actions. Moreover, in
Baldwin-United, the Second Circuit emphasized that the district court’s injunction was
intended only to prevent interference with the ongoing efforts to settle the private-party
litigation. Thus, the district court’s injunction only barred state enforcement actions which
were taken “to induce the defendants to contribute more toward the settlement being
reached in the federal court,” and did “not enjoin the states from seeking prospective
injunctive relief against unlawful business practices by defendants or from exercising law
enforcement or regulatory powers, provided these actions do not ‘seek to in any way affect
the rights of any plaintiff or purported class member.’” Id. at 341.

 17
broader public interest, private settlements which a wrongdoer reaches with injured

parties do not preclude the Commissioner from later bringing an enforcement action

involving the same underlying misconduct. The Securities Act makes clear that the

Commissioner’s statutory duties extend well beyond merely obtaining compensation

for the specific private parties who may be injured by particular statutory

violations. Instead, the Commissioner’s enforcement activities are intended to

punish prior misconduct, deter future misconduct and prevent future investor

harm, maintain high professional standards and integrity in the securities industry,

and foster and maintain public confidence in the securities markets. Thus, the

Commissioner may issue orders: suspending or revoking registration statements for

securities, § 3-306; suspending or revoking the registration of broker-dealers or

investment advisers, § 4-412(b); censuring or barring registrants from practicing,

§ 4-412(c); requiring persons to cease and desist from unlawful practices, § 6-

604(a)(1); and ordering wrongdoers to contribute to an “investor education and

protection fund.” § 6-603(b)(2)(E). The Commissioner may order that wrongdoers

provide restitution to injured parties, or “disgorge any profits arising from the

violation,” § 6-604(d)(2), may require reimbursement of his costs of investigation,

§ 6-604(e), and may impose civil penalties. See §§ 4-412(c), 6-603(b)(2)(C), § 6-
604(3)(1). The Commissioner may also obtain orders freezing a wrongdoer’s assets

and appointing a receiver or conservator over the wrongdoer’s assets. § 6-

603(b)(2)(A).

 In State ex rel. Lavender Farms, LLC v. Ashcroft, 558 S.W.3d 88 (Mo. App.

W.D. 2018), we observed that the Securities Act “provides the Commissioner

distinct remedies” not available to private parties, and that it fell “within the

purview of the legislature to provide the Securities Division enforcement powers

which extend beyond” the limitations placed on “an individual purchaser’s ability to
receive a monetary recovery in a civil action.” Id. at 94. Under the statute, “[t]he

 18
Securities Division is charged with enforcement duties that may reasonably extend

beyond a limitation on a private party's civil suit.” Id.

 Of the various remedies available to the Commissioner, only restitution

directly seeks to compensate the victims of individual statutory violations; the

Commissioner’s other remedies are not specifically directed to remedying individual

harm. There appears to be some disagreement in the federal caselaw concerning

the effect of a private-party settlement on a government agency’s ability to later

seek additional restitution on behalf of injured parties. Some federal cases suggest

that a private-party settlement bars the government agency from seeking additional

restitutionary relief on behalf of the settling victim;5 while other cases suggest that

the amount of the private party’s settlement would merely reduce the amount of

restitution the agency could recover.6

 For two reasons, we need not decide whether the investors’ private

settlements prevent the Commissioner from ordering restitution, or instead simply

limit the scope of any restitutionary remedy. First, the Commissioner may plainly

award other remedies which are exclusively available to the Securities Division,

such as civil penalties and costs of investigation. Those other, exclusively

governmental remedies are not precluded by Brady’s settlements with the affected

 5 See, e.g., IntelliGender, 771 F.3d at 1180 (although state agency might be
seeking a different amount of restitution for violations of unfair competition and false
advertising statutes than in earlier private class action, “the appropriate inquiry is not
what relief was ultimately granted, but whether the government is suing for the same relief
already pursued by the plaintiff. Here, the class pursued restitution, and the government
now seeks the same.” (citation omitted)).
 6 See, e.g., EEOC v. Waffle House, Inc., 534 U.S. 279, 282, 296-97 (2002) (in a
case in which the EEOC sought “victim-specific judicial relief,” the Court observed that, if
the victim “had accepted a monetary settlement, any recovery by the EEOC would be
limited accordingly,” under the principle that “‘the courts can and should preclude double
recovery by an individual’” (citation omitted)); Herman, 140 F.3d at 1428 (despite private-
party settlement, holding that “[t]he Secretary [of Labor]'s action may proceed against the
Ficklings as ‘parties in interest’ for civil penalties and equitable relief, including but not
limited to disgorgement of profits, rescission, and restitution of Plan losses”).

 19
investors. Given the availability of those other remedies, a writ of prohibition

preventing the Commissioner from proceeding at all is unwarranted.

 In addition, under § 6-604(d)(2), the Commissioner is authorized to order a

violator to “disgorge any profits arising from the violation,” as an alternative to an

“order to pay restitution for any loss.” While restitution may be a remedy designed

to compensate losses suffered by private parties, disgorgement serves a different,

public-interest purpose. Federal courts have held that “‘[d]isgorgement is a

distinctly public-regarding remedy, available only to government entities seeking to

enforce explicit statutory provisions.’” FTC v. LoanPointe, LLC, 525 Fed. Appx. 696,

698 (10th Cir. 2013) (quoting FTC v. Bronson Ptrs, LLC, 654 F.3d 359, 372 (2d Cir.

2011)). Thus, the Supreme Court of the United States has recognized that the

disgorgement remedy authorized by the federal securities laws is imposed to

remedy violations “committed against the United States rather than an aggrieved

individual,” and is “imposed for punitive purposes” and to deter future wrongdoing,

rather than primarily for compensation. Kokesh v. SEC, 137 S.Ct. 1635, 1643

(2017). “Disgorgement typically is not used for restitution. The purpose of

disgorgement is to force a defendant to give up the amount by which he was

unjustly enriched rather than to compensate the victims of fraud.” SEC v.
Johnston, 143 F.3d 260, 263 (6th Cir. 1998) (citation and internal quotation marks

omitted), overruled on other grounds by Raymond B. Yates, M.D., P.C. Profit

Sharing Plan v. Hendon, 541 U.S. 1 (2004). Because “[t]he primary purpose of

disgorgement is not to refund others for losses suffered but rather to deprive the

wrongdoer of his ill-gotten gain,” courts recognize that monies received through

disgorgement may properly be retained by the government, rather than paid out to

the victims of statutory violations. FEC v. Craig for U.S. Senate, 816 F.3d 829, 847

(D.C. Cir. 2016) (citations and internal quotation marks omitted); see also, e.g., SEC
v. Kahlon, 873 F.3d 500, 509 (5th Cir. 2017) (quoting SEC v. Blatt, 583 F.2d 1325,

 20
1335 (5th Cir. 1978)); Herman, 140 F.3d at 1422 (“Even though disgorgement of

profits may produce money, . . . disgorgement of profits is a distinctly equitable

remedy different from the legal remedy of compensatory damages . . . .”).7 Even if

the Commissioner were to order a remedy against Brady under § 6-604(d)(2), that

remedy might be a disgorgement remedy fundamentally different from the

restitution available to the investors themselves.

 The circuit court erred in concluding that Brady’s direct settlements with the

ten affected investors had the effect of wholly precluding the Commissioner from

proceeding under § 6-604 of the Securities Act. While Brady’s private settlements

may limit the scope of the remedies available to the Commissioner, a permanent

writ of prohibition was not justified on this basis. Issues concerning the precise

scope of the remedies available to the Commissioner can be addressed on a full

factual record, as necessary, following the conclusion of the administrative

proceeding.

 IV.
 In the circuit court, Brady asserted two additional arguments to support the

issuance of a writ of prohibition: that the Securities Division’s administrative

petition was time-barred; and that the challenged transactions do not involve

“securities” subject to the Securities Act’s restrictions. Because these arguments

could provide alternative grounds to affirm the circuit court’s grant of a permanent

writ of prohibition, we address these additional arguments below.

 7 Under § 409.6-603(e), “[t]he commissioner may create an ‘Investor
Restitution Fund’ for the purpose of preserving and distributing to aggrieved investors,
disgorgement or restitution funds obtained through enforcement proceedings under this
act.” Even if we assume that funds recovered by the Commissioner in the form of
disgorgement of profits under § 6-604(d)(2) may be payable into the “Investor Restitution
Fund,” and may ultimately be disbursed to aggrieved investors, this does not alter the fact
that the disgorgement remedy is only available to the Commissioner, and is not measured
by the damages necessary to compensate a defrauded investor for their loss.

 21
 As an initial matter, the Commissioner argues that Brady is not entitled to

argue alternate grounds for affirmance, because Brady did not cross-appeal from

the circuit court’s judgment. The Commissioner is mistaken. Brady was not

required to appeal from a judgment which awarded him all of the relief he sought (a

permanent writ of prohibition requiring the Commissioner to dismiss the

administrative proceeding with prejudice). Because he received all that he had

asked for, Brady was not “aggrieved” by the circuit court’s judgment, and thus had

no right – and no incentive – to appeal from that decision. See § 512.020. “A party

cannot appeal from a judgment wholly in his favor, one that gives him all he asks[.]”

Smith v. City of St. Louis, 395 S.W.3d 20, 26-27 (Mo. 2013) (citation omitted). “A

claimant who suffers no harm, adverse ruling, or unfavorable decision cannot

reasonably be expected to bring a cross-appeal to challenge a judgment entirely in

its favor.” Treasurer v. Mickelberry, 606 S.W.3d 150, 158 (Mo. App. W.D. 2020).

The caselaw is clear that a respondent need not file a cross-appeal merely to raise

alternate grounds for affirmance of the circuit court’s judgment, so long as the

respondent does not seek to alter or expand the relief awarded by the circuit court.

See, e.g., Ritter v. Ashcroft, 561 S.W.3d 74, 83 n.3 (Mo. App. W.D. 2018); Johnson v.

Medtronic, Inc., 365 S.W.3d 226, 239 n.12 (Mo. App. W.D. 2012); Holman v.
Holman, 228 S.W.3d 628, 633-34 (Mo. App. S.D. 2007).

 A.
 Brady argues that the Securities Division’s petition is barred, in whole or in

part, by three statutes of limitations found in chapter 516 of the Revised Statutes of

Missouri. The three statutes – §§ 516.380, .390, and .400 – provide:

 All actions and suits, upon any statute, for any penalty or
 forfeiture given in whole or in part to any person who will prosecute for
 the same, shall be commenced within one year after the commission of
 the offense, and not after.
§ 516.380.

 22
 If the penalty is given in whole or in part to the state, or to any
 county or city, or to the treasury thereof, a suit therefor may be
 commenced, by or in behalf of the state, county or city, at any time
 within two years after the commission of the offense, and not after.
§ 516.390.

 All actions upon any statute for any penalty or forfeiture, given
 in whole or in part to the party aggrieved, shall be commenced within
 three years after the commission of the offense, and not after.
§ 516.400.

 We conclude that the statutes of limitation found in §§ 516.380, .390, and

.400 do not apply to the Securities Division’s administrative enforcement petition.

Brady has not cited this Court to any case in which a statute of limitations found in

chapter 516 of the Revised Statutes of Missouri has been applied to an

administrative proceeding, and we are aware of none. At argument, Brady cited

two cases which he contended involved the application of chapter 516 limitations

periods to administrative proceedings: Div. of Labor Standards v. Walton Constr.

Mgmt Co., 984 S.W.2d 152 (Mo. App. W.D. 1998), and State ex rel. Sure-Way

Transp., Inc. v. Div. of Transp., 836 S.W.2d 23, 28 (Mo. App. W.D. 1992). But both

cases involved petitions filed in the circuit court – not administrative proceedings.

See Walton Constr., 984 SW.2d at 154; Sure-Way, 836 S.W.2d at 27-28. Indeed, in

Sure-Way, this Court held that the running of the two-year statute of limitations

found in § 516.390 was tolled while the Division of Transportation prosecuted an

administrative proceeding to obtain authorization to file the judicial civil-penalty

action. Sure-Way, 836 S.W.2d at 28. Notably, the Court’s analysis in Sure-Way

never suggested that § 516.390 should apply to the administrative proceeding itself.

Instead, we held that the administrative process to authorize the filing of a lawsuit

was simply outside the scope of § 516.390, and should be excluded from the two-year

limitations period. Id. at 27 (holding that “[t]he legislature granted the Division a
full two years between the offense and the filing of its suit in circuit court,” and that

 23
“[s]ection 516.390 does not contemplate any [administrative] process between the

date of offense and the date on which the suit for penalties commences”).

 The underlying administrative proceeding before the Commissioner of

Securities is not the type of proceeding subject to chapter 516’s limitations periods.

Section 516.100 provides that “[c]ivil actions . . . can only be commenced within the

periods prescribed in the following sections, after the causes of action shall have

accrued[.]” (Emphasis added.) “Civil actions” have generally been understood to be

judicial proceedings for the redress of private wrongs. Thus, in Bailey v. Innovative

Management & Investment, Inc., 890 S.W.2d 648 (Mo. 1994), the Missouri Supreme

Court cited to § 516.100 and stated: “The statute of limitations is written in terms of

when an action can be commenced. Rule 53.01 provides that ‘[a] civil action is

commenced by filing a petition with the court.’” Id. at 650 (emphasis added; footnote

omitted). Similarly, Ostermueller v. Potter, 868 S.W.2d 110 (Mo. 1993), held that,

for purposes of the limitations periods in chapter 516, “[a] civil action is commenced

by filing a petition with the court.” Id. at 111 (citation omitted). Ostermueller noted

that § 506.110.2 “defines the commencement of a civil action as ‘[t]he filing of a

petition in a court of record, . . . and suing out of process therein.’” Id.

 This court recognized that a “civil action” is a judicial proceeding in a
somewhat different context in Minx v. State Department of Social Services, 945

S.W.2d 453 (Mo. App. W.D. 1997). In Minx, the Department of Social Services’

Division of Child Support Enforcement filed an administrative child-support

modification order with the circuit court, to obtain judicial enforcement of the order.

We held that Rule 55.03 required that the Division’s court filing be signed by an

attorney. Like Bailey and Ostermueller, Minx emphasized that “[a] ‘civil action’ is

commenced upon the filing of a petition with the court.” 945 S.W.2d at 454. The

Court held that, “[b]y filing the [administrative child-support modification] order
with the circuit court, the director is effectively petitioning the court to review,

 24
adopt, and enforce the order. We find the filing of the director's order with the

circuit court institutes a ‘civil action’ under Rule 41.” Id. at 455. Notably, Minx

never suggested that the contested administrative proceeding which preceded the

issuance of the administrative order itself constituted a “civil action”; instead, we

held that the “civil action” was commenced when the Division requested relief from

the court. See also, e.g., Grissom v. Grissom, 886 S.W.2d 47, 55 (Mo. App. W.D.

1994) (“a civil action, as that term is used in Rule 51.05[, authorizing a peremptory

change of judge], is an independent suit with new issues, new parties, and new

relief which constitutes a final judgment reviewable by an appellate court”).

 In addition to § 516.100’s statement that the statutes of limitation in chapter

516 govern only “civil actions,” the fact that these limitation statutes do not apply to

administrative proceedings is also confirmed by § 516.103. Section 516.103

provides:

 The time for commencement of any suit provided for in sections
 516.380, 516.390 and 516.400, shall not be tolled by the filing or
 pendency of any administrative complaint or action and no such suit
 may be brought or maintained unless commenced within the time
 prescribed by said sections. An administrative order authorizing the
 commencement of any such suit shall not be considered as evidence of
 the violations alleged in any such suit.
(It appears that § 516.103 was adopted in 1993 to legislatively overrule the result

reached in Sure-Way Transportation, 836 S.W.2d 23.) Section 516.103 distinguishes

between “any suit provided for in sections 516.380, 516.390 and 516.400,” on the one

hand, and “any administrative complaint or action,” on the other. While the statute

provides that the “pendency of any administrative complaint or action” does not toll

the limitations periods specified in §§ 516.380, .390, or .400, the wording of

§ 516.103 strongly suggests that those limitations periods do not apply to an

“administrative complaint or action” itself.

 25
 The Missouri Supreme Court’s decision in Excel Drug Co. v. Missouri

Department of Revenue, 609 S.W.2d 404 (Mo. 1980), confirms that the statutes of

limitation in chapter 516 apply only to judicial, but not administrative, proceedings.

In Excel Drug, a Department of Revenue official made a sales tax assessment

against a retail store, including a fraud penalty. The taxpayer-business filed a

Petition for Reassessment, and the Department affirmed the assessment and

penalty following a formal administrative hearing.

 The taxpayer then filed a petition for judicial review of the Department’s tax

and penalty assessment in the circuit court. The taxpayer argued, among other

things, that the Department’s administrative assessment was time-barred, because it

was not made within three years of the underlying transactions, as required by

§ 516.130(2) (which provides a similar limitations period to § 516.400). The

Supreme Court rejected the taxpayer’s claim that § 516.130(2) was applicable to the

administrative assessment of sales taxes and related penalties. The Court quoted

§ 516.100, which provides that the statutes of limitations in chapter 516 govern the

commencement of “[c]ivil actions.” The Court then cited two fundamental

principles:

 It is a well-known and often-repeated rule of law that actions
 and proceedings not clearly within the terms of statutes of limitations
 cannot be brought in by reason of extending the application of the
 statute through construction.
 It is another well-established rule of law that the statute of
 limitations does not begin to run until a cause of action accrues, and
 accrual does not occur until there exists the right of the injured party
 to bring and maintain a claim in a court of law.
Id. at 409 (emphasis added; citations omitted).

 After reviewing the relevant statutes, the Court concluded that the relevant

statutes of limitation only applied to the Department of Revenue’s commencement

 26
of judicial proceedings, but not to the Department’s assessment of taxes and

penalties in a contested administrative case:

 . . . [T]he legislature did not intend the Director to have the
 right to recover unpaid taxes by an action at law until a proper
 assessment has been made, i.e., until an assessment has been made
 that complies with the provisions of §§ 144.010 to 144.510 including
 the provisions for administrative and judicial review . . . . In
 conclusion, it should be abidingly clear that, in the case of one who has
 filed a fraudulent return, the Director does not have authority to
 request the Attorney General to commence an action at law to recover
 unpaid taxes until the Director's assessment has become final, i.e., not
 subject to further review administrative or judicial.
 The making of an assessment does not constitute the
 commencement of an action. Thus, the provisions of §§ 516.100
 to 516.370, which set out the limitation periods for the
 commencement of actions, have no application to the question
 here. In addition, under the fact situation we are considering, there is
 no provision in the sales tax law for a time limitation on the Director's
 authority to make an assessment. The legislature did provide in
 § 144.220 for a two-year limitation period on the Director's authority to
 make an additional assessment, but that section expressly excludes
 from its scope assessments which are made with respect to a
 fraudulent return. The fact that the legislature made such an express
 exclusion indicates that it did not intend to put a time limit on the
 Director's authority to assess those who file a fraudulent return.
 In light of the settled principles of law set forth above, it is clear
 that any statute in Chapter 516 can apply only to limit the
 Director's authority to bring suit in a court of law within a
 given period from the time the assessment becomes final, i.e.,
 when not subject to further administrative or judicial review.
 Therefore, no part of the assessment in this case is invalid by reason of
 its being outside the period of the statute of limitations.
Id. at 410 (emphasis added). Under Excel Drug, the filing of the Securities

Division’s administrative petition before the Commissioner of Securities “does not

constitute the commencement of a[ ] [civil] action” subject to §§ 516.380–.400. Id.

 We emphasize that we address only the specific issue Brady raises: whether

the statutes of limitations found in §§ 516.380, .390, and .400 apply to the Securities
Division’s administrative petition. As in Lavender Farms, we reject Brady’s

 27
suggestion “that the question before this Court is one of ‘forever liability.’” 558

S.W.3d at 94. Our rejection of Brady’s specific argument

 does not mean that there are not other limitations on the time in which
 the Securities Division may bring an action. See, e.g., Patterson v.
 State Bd. of Optometry, 668 S.W.2d 240, 244 (Mo. App. E.D. 1984)
 (holding there was no applicable statute of limitations to bar
 administrative action by Board of Optometry and finding that the
 action was brought within a reasonable time but noting that the action
 could be barred if it was brought “beyond a reasonable time period
 from the time the misconduct occurred”).
Id. Our holding does not give the Securities Division limitless authority to

commence an enforcement action at any time.

 B.
 Brady also contends that the Securities Division’s administrative petition

should be dismissed, to the extent that it challenges transactions in which Brady

sold or recommended variable annuity contracts to his clients. Brady contends that

these transactions are beyond the Commissioner’s regulatory authority, because the

Securities Act’s definition of a “security” “[d]oes not include an insurance or

endowment policy or annuity contract under which an insurance company promises

to pay money either in a lump sum or periodically for life or other specified period.”

§ 409.1-102(28)(B).

 We need not determine if variable annuities are exempted from the Securities

Act’s definition of a “security,” because one of the statutes on which the Securities

Division relies, § 409.5-502, is not limited to transactions in “securities.”

 Section 409.5-502 states:

 (a) It is unlawful for a person that advises others for
 compensation, either directly or indirectly or through publications or
 writings, as to the value of securities or the advisability of investing in,
 purchasing, or selling securities or that, for compensation and as part
 of a regular business, issues or promulgates analyses or reports
 relating to securities:

 28
 (1) To employ a device, scheme, or artifice to defraud
 another person; or
 (2) To engage in an act, practice, or course of business
 that operates or would operate as a fraud or deceit upon another
 person.
Section 5-502 only applies to individuals who advise others concerning securities

transactions, or who analyze securities, for compensation – persons who could be

labelled “securities professionals.” But while § 5-502 only applies to securities

professionals, the transactions which are subject to the statute need not themselves

be securities-related. Instead, the statute prohibits a securities professional from

employing “a device, scheme, or artifice to defraud,” and from engaging in a practice

“that operates or would operate as a fraud or deceit,” without limitation.

 Section 5-502 contrasts with § 5-501, which prohibits anyone from engaging

in fraudulent activity “in connection with the offer, sale, or purchase of a security.”

Section 5-501 provides:

 It is unlawful for a person, in connection with the offer, sale,
 or purchase of a security, directly or indirectly:
 (1) To employ a device, scheme, or artifice to defraud;
 (2) To make an untrue statement of a material fact or to omit
 to state a material fact necessary in order to make the statement
 made, in the light of the circumstances under which it is made, not
 misleading; or
 (3) To engage in an act, practice, or course of business that
 operates or would operate as a fraud or deceit upon another person.
(Emphasis added.) Section 5-501 is not limited to securities professionals, but

applies to any “person” who engages in fraudulent activities. On the other hand,

however, § 5-501 does not prohibit any employment of “a device, scheme or artifice

to defraud,” but instead only prohibits that activity if it occurs “in connection with

the offer, sale, or purchase of a security.”

 The contrast between § 5-501 (which is explicitly limited to transactions in
securities) and § 5-502 (which is not) is highly significant. “When different

 29
statutory terms are used in different subsections of a statute, appellate courts

presume that the legislature intended the terms to have different meaning and

effect.” MC Dev. Co. v. Central R-3 School Dist., 299 S.W.3d 600, 605 (Mo. 2009)

(quoting Nelson v. Crane, 187 S.W.3d 868, 870 (Mo. 2006)); see also, e.g., Spire Mo.,

Inc. v. Mo. Pub. Serv. Comm’n, 607 S.W.3d 759, 772 n.3 (Mo. App. W.D. 2020)

(quoting McAlister v. Strohmeyer, 395 S.W.3d 546, 552 (Mo. App. W.D. 2013)).

Notably, the Official Comments to §§ 501 and 502 of the Uniform Securities Act

state that, while “[s]ection 501 applies to any securities offer, sale or purchase,”

“[s]ection 502(a) applies to any person that commits fraud in providing investment

advice.” The Official Comments to § 502 contemplate that “[a] person can violate

both Section 501 and Section 502 if the person violates Section 502 in connection

with the offer, purchase, or sale of a security.” (Emphasis added.) This Comment

recognizes that a transaction may not be subject to both statutes, but may only be

subject to § 502, if it does not involve “the offer, purchase or sale of a security.”

 While § 5-502 is limited to fraudulent activities engaged in by “securities

professionals,” it is not limited solely to transactions in securities. We reject

Brady’s contention that the Securities Division’s petition exceeds the

Commissioner’s regulatory authority, because the petition challenges transactions
which (according to Brady) do not involve “securities” as defined in § 1-102(28)(B).8

 Conclusion
 The Commissioner of Securities has statutory authority to proceed against

Brady on at least some of the theories espoused by the Securities Division, and is

 8 We recognize that, under our reading of § 5-502, the statute could potentially
be invoked with respect to conduct of a securities professional having no relationship to
their involvement in the securities industry. This case does not involve such transactions,
but instead involves transactions integrally related to Brady’s work as a securities
professional. We need not address the outer bounds of § 5-502’s coverage to resolve this
case.

 30
authorized to award meaningful relief with respect to many, if not all, of the

underlying transactions the Securities Division has challenged. In these

circumstances, the circuit court abused its discretion when it issued a permanent

writ of prohibition directing the Commissioner to dismiss the Securities Division’s

petition with prejudice. The judgment of the circuit court is reversed.

 Alok Ahuja, Judge
All concur.

 31